IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CATHERINE YANG WANG ANDERSON, Individually and on behalf of X.C.W. as the "Next Friend" of X.C.W., a minor,<br><br>Plaintiff,<br><br>vs.<br><br>THE STATE OF NEBRASKA, et al.,<br><br>Defendants. | 4:17-CV-3073<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the motion to dismiss (filing 214) of defendants Susan Boyles and the Remuda Ranch Center for Anorexia and Bulimia and the motion to dismiss (filing 240) of Laureate Psychiatric Clinic and Nancy E. Parke. The movants contend, in relevant part, that the Court lacks personal jurisdiction over them because they have insufficient contacts with the State of Nebraska. The Court agrees, and will dismiss the claims asserted against the movants.

BACKGROUND

The plaintiff, Catherine Yang Wang Anderson (Wang Anderson) is the mother of two girls, X.C.W. and Y.C.W. Filing 154 at 2. Wang Anderson's husband, Bo Wang (Wang) is their father. Filing 154 at 2. X.C.W. was a minor when this case was filed, and Wang Anderson is suing both in her own capacity and as "next friend" of X.C.W. Filing 154 at 2. Very generally, Wang Anderson alleges that X.C.W. was unlawfully made a ward of the State of Nebraska and held by the State against her will. Filing 154 at 2.

In October 2013, after Y.C.W. reported to school authorities that she didn't feel safe going home, both sisters were removed from Wang Anderson's home, and a juvenile proceeding was initiated in the Separate Juvenile Court of Douglas County, Nebraska. Filing 154 at 33, 36, 44. The petition alleged—Wang Anderson says wrongly—that X.C.W. and Y.C.W. had been subjected to inappropriate discipline, not provided with safe housing, deprived of proper parental care and support, and that Wang Anderson had been seen acting in a manner consistent with untreated mental health needs. Filing 154 at 44-45. An ex parte juvenile court order placed the girls in the temporary custody of DHHS, then after a hearing, the juvenile court continued DHHS's temporary custody. Filing 154 at 45-46.

Both girls were diagnosed with mental health disorders. Filing 154 at 52. X.C.W. was sent to a program for treating eating disorders. Filing 154 at 54. She was partially hospitalized—her time was split between the hospital and her foster home. Filing 154 at 54-55. Her condition deteriorated and more intensive treatment was recommended. Filing 154 at 68. She was placed at Laureate, in Tulsa, Oklahoma. Filing 154 at 73. Parke is a licensed professional counselor at Laureate. Filing 241-4 at 1.

Laureate is not registered to do business in Nebraska, holds no property in Nebraska, and has no employees in Nebraska. Filing 241-1 at 1. Laureate admitted 144 patients in 2014, 3 of whom were from Nebraska (including X.C.W.). Filing 241-1 at 1-2. X.C.W.'s admission was initiated by Wang Anderson, who contacted Laureate and said she was interested in having X.C.W. placed there. Filing 241-2 at 1-2. X.C.W. was brought to Laureate by Sara Smith of the Nebraska Families Collaborative and an employee of Omaha's Children's Hospital. Filing 241-2. X.C.W.'s treatment was paid for through Wang's insurance. Filing 241-3 at 1. While X.C.W. was

at Laureate, she had contact with her Nebraska family, including telephone calls, visits, and family therapy. Filing 324-1 at 2. And staff from Laureate—including Parke—communicated with people in Nebraska involved in X.C.W.'s case, including family, health care providers, and social workers. *See* filing 324-2 at 4-5, 61, 66-72.

Eventually, X.C.W. was discharged from Laureate and put into a new foster placement, and she continued treatment for her eating disorder at Children's Hospital in Omaha. Filing 154 at 83-84, 86. But X.C.W.'s anorexia relapsed, and she was again hospitalized. Filing 154 at 91-92. In November 2014, she was placed at Remuda Ranch, a treatment facility in Arizona. Filing 154 at 94. Boyles is a licensed clinical social worker who was, at the time, employed by Remuda Ranch. Filing 215 at 5.

X.C.W. was referred to Remuda Ranch by the director of the Children's Hospital eating disorders program. Filing 215 at 8; *see* filing 154 at 14. Payment arrangements for X.C.W.'s treatment were made by the Nebraska Families Collaborative, and payment was provided by Wang's insurance. Filing 215 at 8-9. No one from Remuda Ranch, including Boyles, visited Nebraska. Filing 215 at 5, 8. But Remuda Ranch staff did participate by telephone in meetings held in Nebraska related to the juvenile court proceedings, and X.C.W. had contact with her Nebraska family though telephone calls, visits, and family therapy. Filing 307 at 4-5. Remuda Ranch staff also communicated with people at the Nebraska Families Cooperative, X.C.W.'s guardian ad litem, and X.C.W.'s Nebraska health care providers. Filing 307 at 5-6.

After discharge from Remuda Ranch, X.C.W. was returned to her previous foster placement. Filing 154 at 102. She moved to another foster home, then to an "independent living arrangement," then to a dormitory at

the University of Nebraska-Lincoln. Filing 154 at 121. But in December 2016, she was returned to her foster home in Blair. Filing 154 at 123. After that, she was sent to another foster placement, where she remained when this complaint was filed. Filing 154 at 124.

Wang Anderson asserts several federal and state-law claims against sixty-nine different defendants, on behalf of herself and X.C.W. Filing 154 at 1-2. She claims a number of federal constitutional violations, including violation of their rights to due process and familial association, unlawful seizure, a deliberately indifferent failure to protect, retaliation for constitutionally protected activity, violation of Wang Anderson's First Amendment rights, and discrimination against Wang and Wang Anderson because of their Chinese origin. Filing 154 at 124-30, 137-47. She also claims X.C.W. wasn't provided with accommodations required by § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Filing 154 at 147-48. And, she says, she and X.C.W. were denied statutory rights arising under 42 U.S.C. §§ 621 *et seq.* & 670 *et seq.* Filing 154 at 150-57. Finally, she asserts state-law claims including negligence, negligent and intentional infliction of emotional distress, and pursuant to Neb. Rev. Stat. § 20-148. Filing 154 at 131-37, 148-50.

## STANDARD OF REVIEW

When jurisdiction is challenged on a pretrial motion to dismiss, the plaintiff need only make a prima facie showing of jurisdiction. *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011); *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008). The evidence is viewed in the light most favorable to the plaintiff. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 592 (8th Cir. 2011). Nonetheless, if the defendant controverts or denies jurisdiction, the plaintiff still carries the

burden of proof. *See id.*; *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010); *Miller*, 528 F.3d at 1090. The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto. *Miller*, 528 F.2d at 1090; *Coen v. Coen*, 509 F.3d 900, 904-05 (8th Cir. 2007).

## DISCUSSION

The initial question presented by these motions—and the question the Court finds to be dispositive—is whether exercising personal jurisdiction over the movants in Nebraska is consistent with due process.

In order to satisfy the due process clause, a defendant must have minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Pangaea*, 647 F.3d at 745. The fundamental inquiry is whether the defendant has purposefully availed itself of the benefits and protections of the forum state to such a degree that it should reasonably anticipate being haled into court there. *Viasystems*, 646 F.3d at 594. Purposeful availment is required to ensure that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person. *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693-94 (8th Cir. 2003). Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant that creates a substantial connection with the forum state. *Id.* at 694.

The minimum contacts necessary for due process may be the basis for either "general" or "specific" jurisdiction. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). A court obtains general jurisdiction against a defendant who has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities

directed at the forum. *Id*. The standard for general jurisdiction is very demanding, and "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there": "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Specific jurisdiction over a defendant, on the other hand, is exercised when a state asserts personal jurisdiction over a nonresident defendant that has purposefully availed itself of the privilege of conducting business in the forum in a suit arising out of or related to the defendant's contacts with the forum. *See Pangaea*, 647 F.2d at 745-46; *Johnson*, 614 F.3d at 794-95. It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 477 (8th Cir. 2012); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The Eighth Circuit has set forth a five-part test for measuring a defendant's contacts with a forum state: (1) the nature and quality of the contacts with the forum state, (2) the quantity of those contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. *Wells Dairy*, 607 F.3d at 518-19. The third factor distinguishes whether the jurisdiction is general or specific. *Id*. at 518. The first three factors are primary factors, and the remaining two are secondary. *Johnson*, 614 F.3d at 794. And a court is to look at all the factors in the aggregate and examine the totality of the circumstances in determining personal

jurisdiction. *Id*. The five-factor test "'is not to be mechanically applied.'" *Pangaea*, 647 F.3d at 746 n.4.

Wang Anderson argues that she has specific personal jurisdiction over all of the movants. Filing 306 at 13; filing 323 at 18. She points out that both Laureate and Remuda Ranch agreed to admit X.C.W., a resident of Nebraska and ward of the state, as a patient. Filing 306 at 13; filing 323 at 20. Payment was provided by insurance from Wang, "who owns real estate in Nebraska and periodically returned there." Filing 323 at 21; *see* filing 306 at 14. The movants were responsible for arranging and supervising contact and visitation between X.C.W. and her Nebraska family. Filing 306 at 14-15; filing 323 at 21. And their involvement included communicating with Nebraska officials and care providers. Filing 306 at 15-16; filing 323 at 21.

But it is well established that the "'use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process.'" *Wells Dairy*, 607 F.3d at 519 (quoting *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 656 (8th Cir. 1982)); *see also e.g.*, *Dairy Farmers*, 702 F.3d at 476-77; *Viasystems*, 646 F.3d at 594; *Institutional Feed Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 456 (8th Cir. 1984); *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 453, 455 (8th Cir. 1977). "Indeed, these isolated connections are just the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction." *Viasystems*, 646 F.3d at 594. And entering into a contract with a forum resident, standing alone, does not provide the requisite contacts between a nonresident defendant and the forum state either, because it is the contacts between the defendant and the forum state—not a forum resident—that are of interest. *See Mountaire Feeds*, 677

F.2d at 655; *see also* *Golden State Strawberries*, 747 F.2d at 456; *Aaron Ferer & Sons*, 558 F.2d at 455 n.6.

For instance, in *Dairy Farmers*, 702 F.3d at 474, a Missouri cooperative sued a Canadian commodities broker in Missouri. Applying its five-part test, the Eighth Circuit found that due process did not permit that exercise of jurisdiction. *Id.* at 479. The Eighth Circuit found the nature and quality of the defendant's contacts with Missouri to be lacking, despite the fact that the defendant sought and received credit from a company in Missouri, and solicited the plaintiff's business knowing that it had a Missouri headquarters. *Id.* at 478. The quantity of the contacts—scattered emails and telephone calls—also weighed against jurisdiction. *Id.* at 479. The inconvenience to the parties, the Eighth Circuit said, was balanced: litigation in Missouri likely inconvenienced the defendant, while litigation elsewhere likely inconvenienced the plaintiff. *Id.* And while Missouri had an interest in providing a forum for a company headquartered there, that did not overcome the insufficiency of the defendant's contacts with Missouri. *Id.*

Other courts have reached similar conclusions on more comparable facts. In *Harlow v. Children's Hospital*, for instance, the First Circuit found that a court in Maine did not have personal jurisdiction over a Maine resident's suit against a Massachusetts hospital, despite the hospital's acceptance of Maine resident as a juvenile patient, receipt of payment from Maine Medicaid, and extensive communications between the hospital and various people in Maine. 432 F.3d 50, 58-59 (1st Cir. 2005). The Court of Appeals explained that there was

> no evidence that the Hospital purposefully induced [the plaintiff] to leave Maine to come to Massachusetts. There is not even any evidence that the Hospital induced the [plaintiff's] pediatrician to

> refer the [plaintiff] to Maine. *That the reputation and expertise of an institution lead to referrals from out of state cannot be enough to establish specific jurisdiction.*

*Id.* at 62-63 (emphasis supplied). The Court of Appeals also rejected the plaintiff's reliance on the Massachusetts hospital's awareness that it was accepting a patient from Maine:

> If that rationale—an out-of-state plaintiff availing herself of services in Massachusetts—were sufficient, then the Hospital would be subject to suit for merely taking a patient from elsewhere. That the consequences of medical care remain with a patient throughout her lifetime provides even less of a basis to assert jurisdiction. Jurisdiction cannot be created by and does not travel with the plaintiff patient wherever she goes.

*Id.* at 63. The hospital, the court said, "rendered medical care, a professional and highly personal service, and it did so entirely in Massachusetts." *Id.* The court also rejected the plaintiff's reliance on payment from Maine Medicaid—a state program—reasoning that the State of Maine's payment for the plaintiff's treatment "is not a great deal different for specific jurisdiction purposes than if [the patient's] parents had written in Maine and mailed to the Hospital a check on their Maine bank account." *Id.* "While the utilization of Medicaid from the patient's state may cause extra communication and paperwork," the court said, "it does not by itself rise to the level of importance necessary to establish specific jurisdiction." *Id.* at 64. "In the end," the Court of Appeals wrote,

> this case is about a patient who lives in Maine and was referred by a Maine doctor to a hospital in Boston, and who underwent a medical procedure in Boston which gave rise to a cause of action; she returned to Maine and the procedure was paid for from Maine. That cannot be enough to subject the Hospital to suit in Maine. The question is not whether hospitals may be held responsible in lawsuits for their activities, but whether they may be haled into court out of state because they accept out-of-state patients. It would be unreasonable to conclude that they could.

*Id.* at 68-69; *see also Wolf v. Richmond Cty. Hosp. Auth.*, 745 F.2d 904, 909-12 (4th Cir. 1984); *Bechard v. Constanzo*, 810 F. Supp. 579, 583-87 (D. Vt. 1992).

The Court finds that reasoning persuasive. Returning to the Eighth Circuit's five-part rubric for evaluating a defendant's contacts with a forum state, the Court finds the nature and quality of the movants' contacts with the forum state, and the quantity of those contacts, to be extremely limited. The only potential distinguishing factor is that X.C.W. was in the legal custody of DHHS, but Wang Anderson has directed the Court to no authority suggesting that is meaningfully different from admitting a child whose parents are residents of the forum state.[1] Nor has the Court been directed to any authority suggesting that contacts with a forum state are more

---

[1] Wang Anderson submits that X.C.W. was subject to the Interstate Compact for the Placement of Children, Neb. Rev. Stat. § 43-1103, meaning that movants, "to the extent they cared for a Nebraska ward or foster child, were subject to the jurisdiction of the State of Nebraska." Filing 306 at 16. But that means that DHHS officials reached out of state, not that the movants reached in—and it is the defendant's conduct that must form the necessary connection with the forum state that is the basis for its jurisdiction. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

significant when they're contacts with agents of state government, as opposed to with any other state resident. The movants simply didn't conduct any activities in Nebraska—they simply accepted a patient from Nebraska.

The balance of the Eighth Circuit's test doesn't help Wang Anderson either. While Nebraska has an interest in providing a forum for its residents, so too do the movants' home states—and those states have an additional interest in claims arising from the practice of medicine within their borders. *See Harlow*, 432 F.3d at 67. And the convenience of the parties is at best a wash. In sum, the Eighth Circuit's five-part test weighs rather sharply against exercising jurisdiction in Nebraska.

Finally, Wang Anderson suggests that she should be permitted jurisdictional discovery before her claims against the movants are dismissed. Filing 306 at 16-17, 19; filing 323 at 22-23, 28. She says that she has not been provided with information about any agreement between the movants and DHHS pursuant to the Interstate Compact for the Placement of Children. Filing 306 at 16; filing 323 at 22. She also says she should be afforded discovery on additional specific contacts related to X.C.W., and any contacts supporting general jurisdiction. Filing 306 at 17, 19; filing 323 at 23, 28.

Discovery is not limited to the merits of a case: where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues. *Pudlowski v. The St. Louis Rams, LLC*, 829 F.3d 963, 964 (8th Cir. 2016); *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). But Wang Anderson has not actually moved for discovery. *See Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 713 (8th Cir. 2003). Moreover, when a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional

discovery. *Viasystems*, 646 F.3d at 598; *see Steinbuch v. Cutler*, 518 F.3d 580, 588-89 (8th Cir. 2004).

And in this case, beyond the contacts actually evidenced, Wang Anderson has presented nothing more than speculation that there might be an agreement with DHHS, or might be more communications, or might be some basis for general jurisdiction. *See Viasystems*, 646 F.3d at 598; *see also Steinbuch*, 518 F.3d at 589. The Court has no reason to believe such evidence exists—or that such evidence, if it existed, would be substantial enough to affect the Court's conclusion. More calls or emails to Nebraska about X.C.W.'s condition would not be enough, and there is no credible basis to think that Wang Anderson can meet the demanding standard for general personal jurisdiction. Accordingly, the Court will grant the movants' motions to dismiss without additional discovery.

IT IS ORDERED:

1. The motion to dismiss (filing 214) of defendants Susan Boyles and the Remuda Ranch Center for Anorexia and Bulimia is granted.

2. The motion to dismiss (filing 240) of Laureate Psychiatric Clinic and Nancy E. Parke is granted.

3. Wang Anderson's claims against Boyles, Remuda Ranch, Laureate, and Parke are dismissed.

4. Boyles, Remuda Ranch, Laureate, and Parke are terminated as parties.

Dated this 27th day of April, 2018.

BY THE COURT:

_____
John M. Gerrard
United States District Judge