IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CATHERINE YANG WANG ANDERSON, Individually and on behalf of X.C.W. as the "Next Friend" of X.C.W., a minor,<br><br>Plaintiff,<br><br>vs.<br><br>THE STATE OF NEBRASKA, et al.,<br><br>Defendants. | 4:17-CV-3073<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the motion to dismiss (filing 196) of the Papillion La Vista Community Schools. That motion will be denied without prejudice.

BACKGROUND

The plaintiff, Catherine Yang Wang Anderson (Wang Anderson) is the mother of two girls, X.C.W. and Y.C.W. Filing 154 at 2. Wang Anderson's husband, Bo Wang (Wang) is their father. Filing 154 at 2. X.C.W. was a minor when this case was filed, and Wang Anderson is suing both in her own capacity and as "next friend" of X.C.W. Filing 154 at 2. Very generally, Wang Anderson alleges that X.C.W. was unlawfully made a ward of the State of Nebraska and held by the State against her will. Filing 154 at 2.

But it was Y.C.W. who first drew the attention of authorities. After Y.C.W. reported to officials at her high school—in the Millard Public Schools, not Papillion La Vista—that she didn't feel safe going home, sheriff's officers removed Y.C.W. from Wang Anderson's residence and took her to Project

Harmony for a temporary foster placement. Filing 154 at 33. After X.C.W. went to school the next day—again, in Millard, not Papillion La Vista—she was also placed in the temporary custody of the Nebraska Department of Health and Human Services (DHHS). Filing 154 at 36. X.C.W. and Y.C.W. were placed with the same foster parent, and both girls were evaluated at Project Harmony. Filing 154 at 34, 37, 43.

A juvenile proceeding was initiated in the Separate Juvenile Court of Douglas County, Nebraska. Filing 154 at 44. The petition alleged—Wang Anderson says wrongly—that X.C.W. and Y.C.W. had been subjected to inappropriate discipline, not provided with safe housing, deprived of proper parental care and support, and that Wang Anderson had been seen acting in a manner consistent with untreated mental health needs. Filing 154 at 44-45. An ex parte juvenile court order placed the girls in the temporary custody of DHHS, then after a hearing, the juvenile court continued DHHS's temporary custody. Filing 154 at 45-46.

X.C.W. was sent to a program for treating eating disorders. Filing 154 at 54. But her condition had deteriorated and more intensive treatment was recommended. Filing 154 at 68. She was placed at the Laureate Psychiatric Clinic and Hospital in Tulsa, Oklahoma. Filing 154 at 73. Eventually, X.C.W. was discharged from Laureate and put into a new foster placement, and she continued treatment for her eating disorder at Children's Hospital in Omaha. Filing 154 at 83-84, 86. Her new foster parents—Tyler Hansen and Jennice Reid-Hansen—lived in Bellevue, Nebraska at the time, filing 154 at 84, and the Court infers that this was when X.C.W. was enrolled in a Papillion La Vista school.[1]

---

[1] It is not stated in the complaint when X.C.W. was enrolled in Papillion La Vista, nor are any facts alleged about anything that might have happened there. The factual paucity of

But X.C.W.'s anorexia relapsed, and she was again hospitalized. Filing 154 at 91-92. In November 2014, she was placed at Remuda Ranch, a treatment facility in Arizona. Filing 154 at 94. After discharge from Remuda Ranch, X.C.W. was returned to her foster placement with Hansen and Reid-Hansen, who moved to Blair, Nebraska, resulting in X.C.W.'s transfer to the Blair School District in 2015. Filing 154 at 102, 112-13.

In May 2016, the juvenile court changed the permanency objective for X.C.W. to independent living. Filing 154 at 121. She moved to another foster home, then to an "independent living arrangement," then to a dormitory at the University of Nebraska-Lincoln. Filing 154 at 121. But in December 2016, she was returned to her foster home in Blair. Filing 154 at 123. After that, she was sent to another foster placement, where she remained when this complaint was filed. Filing 154 at 124.

Wang Anderson asserts several federal and state-law claims against sixty-nine different defendants, on behalf of herself and X.C.W. Filing 154 at 1-2. She claims a number of federal constitutional violations, including violation of their rights to due process and familial association, unlawful seizure, a deliberately indifferent failure to protect, retaliation for constitutionally protected activity, violation of Wang Anderson's First Amendment rights, and discrimination against Wang and Wang Anderson because of their Chinese origin. Filing 154 at 124-30, 137-47. She also claims X.C.W. wasn't provided with accommodations required by § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Filing 154 at 147-48. And, she

---

the complaint as to Papillion La Vista is, however, not addressed by Papillion La Vista's motion to dismiss. *See* filing 197. The Court infers that X.C.W. attended a Papillion La Vista school at this point because Bellevue is close to the boundaries of the Papillion La Vista district, and it seems likely that had X.C.W. attended a Bellevue school during this timeframe, the Bellevue school district would have been sued.

says, she and X.C.W. were denied statutory rights arising under 42 U.S.C. §§ 621 *et seq.* & 670 *et seq.* Filing 154 at 150-57. Finally, she asserts state-law claims including negligence, negligent and intentional infliction of emotional distress, and a civil rights claim pursuant to Neb. Rev. Stat. § 20-148. Filing 154 at 131-37, 148-50. Of those claims, six are asserted against Papillion La Vista: §§ 1983 & 1985, negligence, § 504, § 20-148, and the emotional distress claims. Filing 154 at 126, 130, 147-49.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* While the Court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party, *Gallagher v. City of Clayton,* 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal,* 556 U.S. at 678.

## DISCUSSION

Papillion La Vista moves to dismiss the state-law negligence and emotional distress claims for failure to comply with the presentment requirements of the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 *et seq.* (PSTCA). Filing 197 at 1; *see* filing 154 at 130, 148-49. Under Nebraska law, the filing or presentment of a claim to the appropriate political subdivision, while it is not a jurisdictional prerequisite,

is a condition precedent to commencement of a suit under the PSTCA. *Keller v. Tavarone*, 628 N.W.2d 222, 230 (Neb. 2001). And failure to present a claim in compliance with the PSTCA warrants dismissal. *See id.* at 232-33.

But such noncompliance must be raised as an affirmative defense. *Wise v. Omaha Pub. Sch.*, 714 N.W.2d 19, 22 (Neb. 2006). So, it can only be asserted in a Rule 12(b)(6) motion when, on the face of the complaint, allegations are included which could be the subject of the affirmative defense. *See Weeder v. Cent. Cmty. Coll.*, 691 N.W.2d 508, 515 (Neb. 2005). And in this case, the operative complaint is silent with respect to Wang Anderson's compliance with the PSTCA. *See* filing 154; *see also Weeder*, 691 N.W.2d at 515. Accordingly, whether Wang Anderson complied with the PSTCA cannot be decided on a motion to dismiss. *See id.*; *see also Wise*, 714 N.W.2d at 22.[2] The Court will, therefore, deny Papillion La Vista's motion to dismiss Wang Anderson's state law claims, without prejudice to reassertion of its PSTCA defenses through subsequent pleadings and motions.

Papillion La Vista also moves to strike Wang Anderson's jury demand. But the scope of both the jury demand and the motion is unclear. The complaint simply says "Jury Demand" in the caption. Filing 154 at 1. That's certainly sufficient for purposes of Fed. R. Civ. P. 38(b), *see* NECivR 38.1, but it doesn't tell the Court whether Wang Anderson really expects to try *all* her

---

[2] The Court recognizes that before adoption of the Nebraska Rules of Pleading in Civil Actions, a plaintiff's burden to prove compliance with the PSTCA could be tested by demurrer. *See Millman v. Cty. of Butler*, 458 N.W.2d 207, 218 (Neb. 1990). But the Nebraska Supreme Court expressly held in *Weeder*—relying on federal rules of civil procedure—that noncompliance with the PSTCA can be raised on a motion to dismiss only when the necessary facts appear on the face of the complaint. 691 N.W.2d at 515; *see also, e.g., Schmidt v. United States*, 933 F.2d 639, 640 (8th Cir. 1991).

claims to a jury. Papillion La Vista's brief in support of its motion is equally general—Papillion La Vista simply asks to strike the jury demand because, it says, Wang Anderson has no right to a jury trial under the PSTCA. Filing 197 at 3; *see* Neb. Rev. Stat. § 13-907. Wang Anderson's response is narrower: she says only that she is entitled to a jury trial on her § 504 claim. Filing 278 at 3. Whether she is demanding, or ever was demanding, a jury trial as to other claims—particularly her other civil rights claims—is uncertain. And then Papillion La Vista, for its part, discusses only the § 504 claim in its reply brief. Filing 279 at 2-4.

One thing the Court can say with confidence is that the parties disagree about whether Wang Anderson has a right to jury trial on her § 504 claim. And on that point, Wang Anderson has the stronger argument. Courts to have addressed the question have held that to the extent that a § 504 claim seeks legal relief, the plaintiff has a Seventh Amendment right to a jury trial. *See Waldrop v. S. Co. Servs.*, 24 F.3d 152, 156-57 (11th Cir. 1994); *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 832 (4th Cir. 1994); *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir. 1990); *Matthews v. Jefferson*, 29 F. Supp. 2d 525, 537 (W.D. Ark. 1998); *cf. Rodgers v. Magnet Cove Pub. Sch.*, 34 F.3d 642, 644-45 (8th Cir. 1994). It is true, as Papillion La Vista argues, that the PSTCA's waiver of sovereign immunity is limited with respect to the right to a jury trial. Filing 197 at 4-6. But sovereign immunity from § 504 claims has been abrogated by Congress. *See* 42 U.S.C. § 2000d-7; *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 72-73 (1992); *see also Pandazides*, 13 F.3d at 828 n.7.; *Matthews*, 29 F. Supp. 2d at 536-37.

Similarly, it has been held that the Seventh Amendment guarantees a right to a jury trial on the merits of an action seeking legal relief under § 1983. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687,

709 (1999). But that right is not unlimited. *See id.* at 722. And the parties have not engaged on that question, or on any issue that would help the Court establish the contours of Wang Anderson's claims. In other words, whether Wang Anderson has a right to a jury trial on some or all of her claims depends, not only on the PSTCA, but the nature of the claim and the relief sought. And the briefing and record, at this point, don't permit the Court to definitively resolve that. Nor is it necessary to do so now.

Accordingly, the Court will deny Papillion La Vista's motion to strike Wang Anderson's jury demand, again without prejudice to reasserting the issue when necessary—that is, when it's clear which (if any) of Wang Anderson's claims will be tried, and precisely what questions those claims will ask the trier of fact to answer.

IT IS ORDERED:

1. Papillion La Vista's Motion to Dismiss (filing 196) is denied without prejudice.

2. This matter is referred to the Magistrate Judge for case progression upon disposition of the other pending motions to dismiss.

Dated this 30th day of April, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge