IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CATHERINE YANG WANG ANDERSON, | |
| Plaintiff, | 4:17-CV-3073 |
| vs. | MEMORANDUM AND ORDER |
| THE STATE OF NEBRASKA, et al., | |
| Defendants. | |

This matter is before the Court on the motion to dismiss (filing 247) filed by the Millard Public Schools and Matthew Heys, Gregory Tiemann, and Susan Hancock (collectively, the Millard Defendants). The Court will grant their motion in its entirety.

BACKGROUND

The plaintiff, Catherine Yang Wang Anderson (Wang Anderson) is the mother of two girls, X.C.W. and Y.C.W. Filing 154 at 2. X.C.W. was a minor when this case was filed, and Wang Anderson sued both in her own capacity and as "next friend" of X.C.W. Filing 154 at 2. Millard Public Schools (MPS) is the public school district where X.C.W. was attending school—specifically, Millard West High School—when the events giving rise to this litigation began. Filing 154 at 11-12, 23. Heys taught U.S. History at Millard West. Filing 154 at 11, 24. Hancock was a counselor at Millard West, and Tiemann was the school principal. Filing 154 at 11.

Very generally, Wang Anderson alleges that X.C.W. was unlawfully made a ward of the State of Nebraska and held by the State against her will. Filing 154 at 2. But it was Y.C.W. who first drew the attention of authorities.

According to Wang Anderson, Y.C.W. had an "inappropriate" personal relationship with Heys, her history teacher, because Y.C.W. was permitted and encouraged to confide in him about personal problems.[1] Filing 154 at 24-28. Y.C.W. told Heys she had sexual identity issues. Filing 154 at 35. Heys never attempted to communicate with Wang Anderson about Y.C.W.'s problems. Filing 154 at 35. Heys later explained that he did not believe Wang Anderson would understand, and that she "would be very angry and would hurt [Y.C.W.] if she found out." Filing 154 at 36.

Wang Anderson alleges that Y.C.W. communicated confidentially with Heys beginning in August or September 2013, by email and text message, despite the fact that Y.C.W. was no longer in his history class. Filing 154 at 26. Heys did not report this communication to anyone until October, when he told a school counselor after Wang Anderson found out about it. Filing 154 at 27. And according to Wang Anderson, Tiemann and Hancock knew about Y.C.W.'s communication with Heys and failed to stop it, despite being asked to do so by Wang Anderson. Filing 154 at 27. Wang Anderson also alleges that MPS has "policies, practices, customs or usages . . . which essentially allowed teachers to act as counselors or confidants for students, in violation of the rights of parents . . . to direct the education and moral development of their children." Filing 154 at 28. Wang Anderson blames Y.C.W.'s friendship with Heys for a "breakdown" in her own relationship with Y.C.W. Filing 154 at 28.

After Wang Anderson drove Y.C.W. to school on October 8, 2013, she went directly to Heys, who took her to Hancock to report that Wang Anderson had threatened her. Filing 154 at 28. The Sarpy County deputy sheriff assigned to Millard West as the school resource officer spoke to her shortly

---

[1] This will be addressed below as well, but it bears emphasizing from the outset: the Court finds no reason whatsoever to believe Heys had an inappropriate relationship with Y.C.W.

thereafter. Filing 154 at 28. Officers went to Wang Anderson's home, where they told her about Y.C.W.'s allegations. Filing 154 at 30. Wang Anderson denied them, and law enforcement asked her to go to Millard West to meet to a counselor about them, which she did. Filing 154 at 30.

The meeting at Millard West included Wang Anderson, Hancock, and the resource officer, who said that Y.C.W. had made a number of reports, including that Wang Anderson had threatened to shoot her. Filing 154 at 30. Wang Anderson denied those reports. Filing 154 at 30. Wang Anderson explained her own concerns about the friendship between Y.C.W. and Heys, but according to Wang Anderson, Hancock disregarded them. Filing 154 at 30. Based on Y.C.W.'s report that she didn't feel safe going home, sheriff's officers removed Y.C.W. from Wang Anderson's residence and took her to Project Harmony for a temporary foster placement. Filing 154 at 33.

One of the sheriff's deputies who made initial contact with Wang Anderson observed that when she answered the door, she was wearing a rubber glove, and he suspected that she might be mentally ill. Filing 154 at 29-31. Investigators from the Nebraska Department of Health and Human Services (DHHS) went to Wang Anderson's residence that evening, and reported hazardous conditions. Filing 154 at 35. So, after X.C.W. went to school the next day, she was also placed in the temporary custody of DHHS. Filing 154 at 36. X.C.W. and Y.C.W. were placed with the same foster parent, and both girls were evaluated at Project Harmony. Filing 154 at 34, 37, 43.

A juvenile proceeding was initiated in the Separate Juvenile Court of Douglas County, Nebraska. Filing 154 at 44. The petition alleged—Wang Anderson says wrongly—that X.C.W. and Y.C.W. had been subjected to inappropriate discipline, not provided with safe housing, deprived of proper parental care and support, and that Wang Anderson had been seen acting in a

manner consistent with untreated mental health needs. Filing 154 at 44-45. An ex parte juvenile court order placed the girls in the temporary custody of DHHS, then after a hearing, the juvenile court continued DHHS's temporary custody. Filing 154 at 45-46.

The girls were eventually adjudicated as being juveniles within the meaning of Neb. Rev. Stat. § 43-247(3). Filing 154 at 81. Both spent several months in foster care and mental health treatment. *See* filing 154 at 60-116. In May 2016, the juvenile court changed the permanency objective for X.C.W. to independent living. Filing 154 at 121. She moved to another foster home, then to an "independent living arrangement," then to a dormitory at the University of Nebraska-Lincoln. Filing 154 at 121. But in December 2016, she was returned to foster placement, where she remained when this complaint was filed. Filing 154 at 123-24.

Wang Anderson asserts several federal and state-law claims against sixty-nine different defendants, on behalf of herself and X.C.W. Filing 154 at 1-2. She claims a number of federal constitutional violations, including violation of their rights to due process and familial association, unlawful seizure, a deliberately indifferent failure to protect, retaliation for constitutionally protected activity, violation of Wang Anderson's First Amendment rights, and discrimination against Wang Anderson and her husband because of their Chinese origin. Filing 154 at 124-30, 137-47. She also claims X.C.W. wasn't provided with accommodations required by § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Filing 154 at 147-48. And, she says, she and X.C.W. were denied statutory rights arising under 42 U.S.C. §§ 621 *et seq.* & 670 *et seq.* Filing 154 at 150-57. Finally, she asserts state-law claims including negligence, negligent and intentional infliction of emotional distress,

and a civil rights claim pursuant to Neb. Rev. Stat. § 20-148. Filing 154 at 131-37, 148-50.

Specifically, as to these defendants, Wang Anderson asserts:

1. A § 1983 claim premised on unlawful seizure of X.C.W. in violation of the Fourth Amendment, against Heys, Hancock,[2] and Tiemann (filing 154 at 124);
2. Policy-or-custom claims (*Monell* claims) against MPS (filing 154 at 126);
3. State-law negligence claims against all defendants (filing 154 at 130:
4. A § 1983 claim based on violation of the "substantive due process rights to family integrity and the parent-child relationship" against all "Individual Defendants" (filing 154 at 137);
5. A § 1983 claim based on deliberate indifference to X.C.W.'s serious health and safety needs against all "Individual Defendants" (filing 154 at 142-43);
6. Section 20-148 "civil rights" claims against all defendants (filing 154 at 148); and
7. Negligent and intentional infliction of emotional distress claims against all defendants (filing 154 at 149).

The Millard Defendants move to dismiss all of Wang Anderson's claims against them pursuant to Fed. R. Civ. P. 12(b)(6). Filing 247.

---

[2] Hancock was omitted from the heading for this claim, filing 154 at 124, but the Court assumes that was inadvertent, *see* filing 154 at 125-26.

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly,* 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

## DISCUSSION

Before addressing the parties' arguments claim-by-claim, the Court reiterates one of its previous holdings: the Court has already held that Wang Anderson could not assert claims on X.C.W.'s behalf, and dismissed X.C.W.'s claims without prejudice. Filing 481 at 9-13, 36. Many of the claims asserted against these movants are premised on the alleged breach of their duties to X.C.W., and those claims have been dismissed, for the reasons previously explained by the Court. Filing 481 at 9-13. Only Wang Anderson's own claims remain at issue here.

### 1. 42 U.S.C. § 1983 - UNLAWFUL SEIZURE AND FAMILIAL ASSOCIATION

Wang Anderson's first claim is premised on X.C.W.'s removal from her home by county and state officials.[3] *See* filing 154 at 124-26. She alleges that Heys, Hancock, and Tiemann were somehow legally responsible for that. *See* filing 154 at 125-26. It is extremely difficult to see how. Remember, it was *Y.C.W.* who had confided in Heys. But Wang Anderson's first claim for relief refers only to X.C.W.'s removal from the home.[4] *See* filing 154 at 124-26. X.C.W. was apparently also attending Millard West, but Wang Anderson hasn't alleged that any of the Millard Defendants did anything with respect to X.C.W.

---

[3] The removal of children from a parent's custody violates a constitutional right if the removal occurs without reasonable suspicion of child abuse. *Stanley v. Finnegan*, 899 F.3d 623, 627 (8th Cir. 2018). But because these particular defendants had no actual hand in the removal, the Court need not elucidate the constitutional principles underlying this claim.

[4] Wang Anderson repeatedly elides this distinction in her briefing. *E.g.* filing 343 at 23 (defendants were "all complicit in disrupting the familial relationship and effectuating an unreasonable seizure of Y.C.W. and X.C.W. from Wang Anderson's care.") But briefs are not the place to fundamentally change the theory of a claim.

Wang Anderson's argument seems to be focused on causation: had Y.C.W. not been allowed to confide in Heys, she would not have communicated with him and, ultimately, wouldn't have reported being threatened. *See* filing 343 at 20. Of course, any subsequent chain of causation was neatly severed by the independent decision of authorities to intervene and take custody of the children. *Cf. Dedmon v. Staley*, 315 F.3d 948, 950 (8th Cir. 2003). But even if Wang Anderson had actually alleged causation, that would do nothing to show that Heys, Hancock, or Tiemann behaved wrongfully.

Wang Anderson's theory rests on the unwarranted assumption that it's *per se* inappropriate for a male high school teacher to have a friendly, trusting relationship with a female student. She cites no authority for that proposition. There are, unfortunately, many examples of teacher-student relationships that breached professional boundaries. But there are no allegations that this was one of those—and there are many more examples of young adults who've benefited from the support and guidance of responsible teachers, coaches, and counselors. Neither the law nor common sense require a teacher to turn away from, or violate the trust of, a student who confides in him about a personal crisis. There are professional duties associated with such a situation, of course—but nothing alleged here breached those duties.

Wang Anderson has simply failed to allege any facts from which it could be inferred that X.C.W.'s removal from home was attributable to the Millard Defendants, nor any facts from which it could be inferred that the Millard Defendants acted wrongfully. They had no authority to remove X.C.W. from her home, and there is nothing to suggest they did anything to contribute to that other than report what Y.C.W. said to them. This claim will be dismissed as to the Millard Defendants.

## 2. *MONELL* CLAIMS

A local government entity such as MPS may not be sued under § 1983 on a *respondeat superior* theory of liability—instead, it may be found liable only where the entity *itself* causes the constitutional violation at issue by executing a policy or custom that inflicts the injury. *Brewington v. Keener*, No. 17-1382, 2018 WL 4117728, at \*2 (8th Cir. Aug. 30, 2018). When a plaintiff can point to an official policy that either violates federal law, or directs an employee to do so, no evidence is needed other than a statement of the policy and its exercise to establish a constitutional violation. *Id*. But when a plaintiff alleges an unwritten or unofficial policy, there must be evidence of a practice, so permanent and well-settled so as to constitute a custom, that existed. *Id*. And in this case, Wang Anderson can point to neither an official policy nor evidence of a customary practice.

Instead, her complaint contains a list of 12 conclusory allegations, which she attributes collectively to literally every non-individual defendant. Filing 154 at 126-129. Wang Anderson's entire list of policies and customs is conclusory—she has not alleged any *facts* suggesting the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004); *see also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1076 (8th Cir. 2016). And the facts of her own case are not enough to show the existence of a policy or custom. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).[5] Accordingly, this claim will be dismissed.

---

[5] Wang Anderson neither alleges nor argues, *see* filing 343 at 23-28, that Tiemann was a policymaker for MPS. *See Williams v. Butler*, 863 F.2d 1398, 1402 (8th Cir. 1988); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736 (1989).

3. STATE-LAW NEGLIGENCE CLAIMS

Next, the Millard Defendants argue, with respect to Wang Anderson's state-law negligence claims (and, in fact, with respect to all her state-law claims) that they are barred by Wang Anderson's failure to plead compliance with the requirements of the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 *et seq*. (PSTCA). Filing 248 at 16-17; *see* filing 154 at 130, 148-49. Under Nebraska law, the filing or presentment of a claim to the appropriate political subdivision, while it is not a jurisdictional prerequisite, is a condition precedent to commencement of a suit under the PSTCA. *Keller v. Tavarone*, 628 N.W.2d 222, 230 (Neb. 2001). And failure to present a claim in compliance with the PSTCA warrants dismissal. *See id.* at 232-33.

But such noncompliance must be raised as an affirmative defense. *Wise v. Omaha Pub. Sch.*, 714 N.W.2d 19, 22 (Neb. 2006). So, it can only be asserted in a Rule 12(b)(6) motion when, on the face of the complaint, allegations are included which could be the subject of the affirmative defense. *See Weeder v. Cent. Cmty. Coll.*, 691 N.W.2d 508, 515 (Neb. 2005). And in this case, the operative complaint is silent with respect to Wang Anderson's compliance with the PSTCA. *See* filing 154; *see also Weeder*, 691 N.W.2d at 515. Accordingly, whether Wang Anderson complied with the PSTCA cannot be decided on a motion to dismiss. *See id.*; *see also Wise*, 714 N.W.2d at 22.[6]

---

[6] The Court recognizes that before adoption of the Nebraska Rules of Pleading in Civil Actions, a plaintiff's burden to prove compliance with the PSTCA could be tested by demurrer. *See Millman v. Cty. of Butler*, 458 N.W.2d 207, 218 (Neb. 1990). But the Nebraska Supreme Court expressly held in *Weeder*—relying on federal rules of civil procedure—that noncompliance with the PSTCA can be raised on a motion to dismiss only when the necessary facts appear on the face of the complaint. 691 N.W.2d at 515; *see also, e.g., Schmidt v. United States*, 933 F.2d 639, 640 (8th Cir. 1991).

But as the Court has previously explained at some length, Wang Anderson's negligence claims fail to satisfy Rule 8(a), and the complaint fails to state a negligence claim against *any* defendant because it does not present any of the defendants fair notice of which allegations are made against them. Filing 481 at 13-14. "In sum," the Court found, "Wang Anderson's complaint is deficient, because it fails to provide any given defendant with fair notice of what that defendant is alleged to have done that was negligent." Filing 481 at 17. That finding applies with equal force here. Accordingly, the Court will dismiss Wang Anderson's state-law negligence claims.

4. 42 U.S.C. § 1983 - DUE PROCESS RIGHT TO FAMILY INTEGRITY

Wang Anderson's next claim is premised on the alleged violation of her "substantive due process rights to family integrity and the parent-child relationship" by "all Individual Defendants." Filing 154 at 137. To the extent that this claim is predicated upon X.C.W.'s removal from Wang Anderson's home, it is subject to the same analysis set forth above in the context of Wang Anderson's Fourth Amendment claim. But that said, it's not at all clear what this claim *is* predicated upon, at least with respect to the Millard Defendants.

Part of that is due to the same "shotgun pleading" problem that's infected the Court's discussion of nearly every issue in this case: Wang Anderson alleges nearly everything that happened for a period of months and years, labels them as "substantive due process" violations, and attributes all of it collectively to all the defendants. Filing 154 at 137-42. This leads to absurd conclusions, such as blaming the Millard Defendants for filing a petition to terminate parental rights. *See* filing 154 at 139. Rule 8 alone warrants dismissal of this claim.

And in her brief, Wang Anderson focuses her claim on Heys' relationship with Y.C.W., which she argues "alienated Wang Anderson from Y.C.W. causing a chasm to begin to form in their relationship which grew so vast that it

resulted in Y.C.W.'s reports of abuse or neglect which resulted in the removal of Y.C.W. and X.C.W. from Wang Anderson's care, a violation of Wang Anderson and X.C.W.'s right to family integrity." Filing 343 at 28. But that suffers from the same problems as her first claim for relief: it's premised on a supposed chain of causation that simply doesn't bear up.

Nor is there any legal support for Wang Anderson's assumption that Heys was somehow obliged to tell Wang Anderson when Y.C.W. confided in him.[7] Heys evidently believed that Wang Anderson might be dangerous to Y.C.W., if Wang Anderson found out about Y.C.W.'s gender identity issues. Wang Anderson denies that, and the Court has no reason to question her denial at this point. But there are undoubtedly many adolescents in the world who don't have a supportive family as they struggle with complicated questions of identity and sexuality—or, worse yet, for whom family conflict is part of their crisis. Perhaps Heys' judgment was off about Wang Anderson, or he was misled by what Y.C.W. told him—but even so, nothing alleged suggests the sort of "conscience-shocking" misconduct required to prove a substantive due process claim. *See Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 816 (8th Cir. 2011); *see also B.A.B., Jr. v. Bd. of Educ. of City of St. Louis*, 698 F.3d 1037, 1040 (8th Cir. 2012).

Accordingly, the Court will dismiss Wang Anderson's substantive due process claim as to the Millard Defendants.

---

[7] Wang Anderson's reliance on *Amanda C. ex rel. Richmond v. Case*, 749 N.W.2d 429, 435 (Neb. 2008), in which a child sued a DHHS case worker for misleading her father into surrendering his parental rights, is both factually and legally inapposite, particularly given that the basis for liability in that case was collateral estoppel.

5. 42 U.S.C. § 1983 - DELIBERATE INDIFFERENCE TO HEALTH AND SAFETY

Next, Wang Anderson alleges that "All Individual Defendants" were deliberately indifferent to X.C.W.'s serious health and safety needs, in violation of the Due Process Clause of the Fourteenth Amendment. This claim will be dismissed for two reasons.

First, although Wang Anderson makes reference to "Plaintiffs" suffering injury, filing 154 at 143, it's clear that this claim is premised wholly on X.C.W.'s constitutional rights. Accordingly, it stands dismissed because X.C.W. is not prosecuting it herself. Additionally, Wang Anderson's factual allegations simply do not state a claim against the Millard Defendants on these grounds: there are no factual allegations to suggest that any of the Millard Defendants were indifferent to X.C.W.'s needs—much less the required allegations of "official conduct or inaction . . . so egregious or outrageous that it is conscience-shocking." *See James ex rel. James v. Friend*, 458 F.3d 726, 730 (8th Cir. 2006). Accordingly, this claim will be dismissed as the Millard Defendants.

6. SECTION 20-148

The Court has previously explained why § 20-148 provides no claim for Wang Anderson. Filing 481 at 28-29. That conclusion applies with even more force to the Millard Defendants: § 20-148 expressly excludes "any political subdivision," and does not reach individuals acting in their capacities as public officials. *Cole v. Clarke*, 598 N.W.2d 768, 772 (Neb. Ct. App. 1999); *see Potter v. Bd. of Regents of the Univ. of Nebraska*, 844 N.W.2d 741, 750 (Neb. 2014); *Sinn v. City of Seward*, 523 N.W.2d 39, 49-50 (Neb. Ct. App. 1994). This claim will be dismissed.

## 7. EMOTIONAL DISTRESS CLAIMS

The Court has also previously explained that Wang Anderson's emotional distress claims do not satisfy Rule 8(a), and she has not alleged the required degree of emotional distress for either tort. Filing 481 at 29-33. Nor has she alleged that these defendants engaged in conduct of the "outrageous and extreme" variety necessary to prove intentional infliction of emotional distress. *See* filing 481 at 34-35. These claims will also be dismissed.

IT IS ORDERED:

1. The Millard Defendants' motion to dismiss (filing 247) is granted.

2. Wang Anderson's claims against the Millard Public Schools, Matthew Heys, Gregory Tiemann, and Susan Hancock are dismissed.

3. Millard Public Schools, Matthew Heys, Gregory Tiemann, and Susan Hancock are terminated as parties.

Dated this 25th day of September, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge