IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CATHERINE YANG WANG ANDERSON, | 4:17-CV-3073 |
| Plaintiff, | |
| vs. | MEMORANDUM AND ORDER |
| THE STATE OF NEBRASKA, et al., | |
| Defendants. | |

This matter is before the Court on the motion to dismiss (filing 261) filed by the State of Nebraska, the Nebraska Department of Health and Human Services (NDHHS), Courtney Phillips, Douglas Weinberg, Jennifer White, Carla Heathershaw Risko, Camas Steuter, and the Hon. Elizabeth Crnkovich (collectively, the State Defendants). The Court will grant that motion in part and deny it in part.

BACKGROUND

The plaintiff, Catherine Yang Wang Anderson (Wang Anderson) is the mother of two girls, X.C.W. and Y.C.W. Filing 154 at 2. Wang Anderson's husband, Bo Wang (Wang) is their father. Filing 154 at 2. X.C.W. was a minor when this case was filed, and Wang Anderson sued both in her own capacity and as "next friend" of X.C.W. Filing 154 at 2. Phillips was the chief executive officer of the NDHHS, which is the state agency responsible for the State's child protection and welfare programs. Filing 154 at 3, 5. Weinberg was the director of the NDHHS Division of Children and Family Services. Filing 154 at 5. Steuter was the administrator of that division's Eastern area. Filing 154 at 6. White was an NDHHS social worker. Filing 154 at 8. Heathershaw Risko

was an NDHHS attorney. Filing 154 at 18-19. And Judge Crnkovich was a judge of the Douglas County Separate Juvenile Court. Filing 154 at 12.

Very generally, Wang Anderson alleges that X.C.W. was unlawfully made a ward of the State of Nebraska and held by the State against her will. Filing 154 at 2. But it was Y.C.W. who first drew the attention of authorities. According to Wang Anderson, Y.C.W. had an "inappropriate" personal relationship with a teacher at her high school because Y.C.W. was permitted and encouraged to confide in him about personal problems. Filing 154 at 24-28. According to the teacher, Y.C.W. told him she had sexual identity issues. Filing 154 at 35. Wang Anderson blames Y.C.W.'s friendship with her teacher for a "breakdown" in her own relationship with Y.C.W., who reported to school officials on October 8, 2013 that Wang Anderson had threatened her. Filing 154 at 28.

Based on Y.C.W.'s report that she didn't feel safe going home, sheriff's officers removed Y.C.W. from Wang Anderson's residence and took her to Project Harmony for a temporary foster placement. Filing 154 at 33. One of the sheriff's deputies observed that when Wang Anderson answered the door, she was wearing a rubber glove, and suspected that Wang Anderson might be mentally ill. Filing 154 at 29-31. Investigators from the NDHHS, including White, went to Wang Anderson's residence that evening. Filing 154 at 34. According to Wang Anderson, they concluded that it was safe for X.C.W. to remain there. Filing 154 at 34. But then White reported—Wang Anderson says falsely—that "the physical living conditions are hazardous." Filing 154 at 35. So, after X.C.W. went to school the next day, she was also placed in the temporary custody of NDHHS. Filing 154 at 36. X.C.W. and Y.C.W. were placed with the same foster parent, and both girls were evaluated at Project Harmony. Filing 154 at 34, 37, 43.

A juvenile proceeding was initiated in the Separate Juvenile Court of Douglas County, Nebraska. Filing 154 at 44. The petition alleged—Wang Anderson says wrongly—that X.C.W. and Y.C.W. had been subjected to inappropriate discipline, not provided with safe housing, deprived of proper parental care and support, and that Wang Anderson had been seen acting in a manner consistent with untreated mental health needs. Filing 154 at 44-45. Judge Crnkovich entered an *ex parte* juvenile court order placing the girls in the temporary custody of NDHHS, then after a hearing continued NDHHS's temporary custody. Filing 154 at 45-46.

Wang Anderson alleges that Judge Crnkovich erroneously found that "reasonable efforts were made to prevent removal" of the girls from Wang Anderson's home, when no such efforts had actually been made. Filing 154 at 45. She also alleges that Judge Crnkovich's decision to keep the girls in foster care was unsupported by the evidence. Filing 154 at 46. She alleges that she was denied a formal hearing, despite her right to one. Filing 154 at 47. And she complains about Judge Crnkovich's appointment of a guardian ad litem for her, asserting that "Judge Crnkovich implicitly or expressly determined that Wang Anderson was incapacitated or incompetent by making this appointment" without a hearing or evidence. Filing 154 at 48.

Wang Anderson claims that while in foster care, both girls began to show signs of "mental, emotional and physical distress" that went unnoted and untreated. Filing 154 at 48-49. Both girls were diagnosed with mental health disorders; Wang Anderson claims the diagnoses were inaccurate. Filing 154 at 52. She also alleges, as a basis for liability, that the girls' mental health providers did not encourage them to communicate with her, and that both girls were told they had a right to refuse contact with her. Filing 154 at 53. X.C.W. was sent to a program for treating eating disorders. Filing 154 at 54. She was

partially hospitalized, and her time was split between the hospital and her foster home. Filing 154 at 54-55.

At a November 7, 2013 detention hearing, Judge Crnkovich ordered that X.C.W. and Y.C.W. remain in the temporary custody of the NDHHS. Filing 154 at 61. On the suggestion of the girls' therapists, NDHHS—represented by Heathershaw Risko—recommended to the juvenile court that all parental visitation be therapeutic, and Judge Crnkovich agreed. Filing 154 at 57, 61. Heathershaw Risko allegedly represented to the juvenile court that visitation had been supervised, but had been ended early because of "inappropriate behavior" by Wang Anderson." Filing 154 at 61. Wang Anderson denies that. Filing 154 at 61. Wang Anderson also alleges that Y.C.W.'s therapists approved "certain ways of life, behaviors or actions that were inappropriate, morally corruptive, harmful and detrimental. . . ." Filing 154 at 58.

On January 28, 2014, the Douglas County Attorney petitioned the juvenile court to terminate Wang and Wang Anderson's parental rights. Filing 154 at 75. In the meantime, although the juvenile court had ordered therapeutic visitation, Wang Anderson alleges that neither NDHHS nor Heathershaw Risko did anything to arrange such visitation. Filing 154 at 63. And she claims that Heathershaw Risko made a misrepresentation to the juvenile court that resulted in visitation being suspended. Filing 154 at 78-79. Wang Anderson blames the NDHHS and Heathershaw Risko for failing to provide family therapy. Filing 154 at 70. And she alleges that throughout the girls' foster care, the NDHHS permitted their foster parents to interfere with their communication and visitation with Wang Anderson. Filing 154 at 67.

Hearings were held on the State's termination petitions in March, May, and June 2014, and on June 25 Judge Crnkovich entered an order dismissing the termination petitions, but adjudicating the girls as being juveniles within

the meaning of Neb. Rev. Stat. § 43-247(3). Filing 154 at 81. And visitation was ordered. Filing 154 at 71, 82. Wang Anderson, however, alleges that Judge Crnkovich denied her due process by not holding the adjudication hearing within 90 days of the girls' removal from the home. Filing 154 at 66.

Meanwhile, X.C.W. had been held out of school during her eating disorder program. Filing 154 at 60. Her condition had deteriorated and more intensive treatment was recommended. Filing 154 at 68. She was placed at the Laureate Psychiatric Clinic and Hospital in Tulsa, Oklahoma. Filing 154 at 73. Eventually, X.C.W. was discharged from Laureate and put into a new foster placement, and she continued treatment for her eating disorder at Children's Hospital in Omaha. Filing 154 at 83-84, 86. Wang Anderson suggested that X.C.W. be fostered with Chinese relatives of hers, but NDHHS refused, and placed her with unrelated foster parents. Filing 154 at 83-84. Wang Anderson claims that these foster parents were unqualified, and that NDHHS should have known that. Filing 154 at 84. She also accuses the State, the NDHHS, Phillips, Weinberg, and Steuter for waiving a regulatory limitation on the number of children that can be placed in a foster home. Filing 154 at 103.

Sometimes, X.C.W.'s foster parents were unable to take her to Children's, so transportation was provided by Camelot Transportation. Filing 154 at 89. She rode with other passengers, some adult men. Filing 154 at 89. According to Wang Anderson, X.C.W. was "lured, sexually abused and sexually exploited" by another passenger. Filing 154 at 90. Or, to be more specific, a juvenile court filing indicates that the two had exchanged telephone numbers and texted one another, and eventually X.C.W. sent him a nude picture of herself and expressed romantic feelings toward him. Filing 154 at 90.

At this point, the permanency objective for X.C.W. was still reunification. Filing 154 at 92. But Judge Crnkovich ordered that school records and

information should be provided to Wang Anderson and Wang only through the family permanency specialist—essentially, preventing Wang Anderson from communicating with school personnel. Filing 154 at 92. And Judge Crnkovich ordered Wang Anderson to communicate with all the girls' service providers, including the family permanency specialist, only through counsel or her guardian ad litem. Filing 154 at 92. Eventually, Wang Anderson sought to subpoena the girls' health records, but Judge Crnkovich quashed the subpoenas. Filing 154 at 104, 107. Wang Anderson claims the evidence was insufficient to support the juvenile court's order. Filing 154 at 107.

Meanwhile, Heathershaw Risko suggested to the family permanency specialist that the NDHHS would not be recommending reunification as the ongoing permanency objective. Filing 154 at 92. This, Wang Anderson suggests, undermined efforts at reunification and led to family therapy including X.C.W.'s foster parents instead of Wang Anderson. Filing 154 at 93. Generally, Wang Anderson blames the NDHHS for preventing, or failing to facilitate, visitation throughout the pendency of the juvenile proceeding, which she says caused the family relationship to deteriorate. Filing 154 at 106.

In the meantime, X.C.W.'s anorexia relapsed, and she was again hospitalized. Filing 154 at 91-92. In November 2014, she was placed at Remuda Ranch, a treatment facility in Arizona. Filing 154 at 94. Wang Anderson alleges that at Remuda Ranch—and generally throughout X.C.W.'s mental health treatment—X.C.W.'s care providers didn't appropriately include X.C.W.'s family in her therapy. Filing 154 at 96. Eventually, visitation was cut off, allegedly in retaliation for Wang Anderson's efforts to contact X.C.W. and participate in her treatment. Filing 154 at 99.

After discharge from Remuda Ranch, X.C.W. was returned to her previous foster placement. Filing 154 at 102. She was not, over Wang

Anderson's objection, placed with relatives, despite a rule Wang Anderson says should have preferred such a placement. Filing 154 at 100. Wang Anderson claims that Judge Crnkovich denied her equal protection by not considering a recommendation to place X.C.W. with her Chinese relatives. Filing 154 at 101. Then, X.C.W. was permitted to attend a Project Everlast meeting at which, Wang Anderson alleges, X.C.W. was again "lured and sexually assaulted or sexually exploited by an unknown adult male during and after the lunch hour." Filing 154 at 108-09. Wang Anderson says the incident wasn't discovered for a week, and alleges that X.C.W. was injured. but no treatment was provided, and no law enforcement investigation was initiated. Filing 154 at 109-10. Wang Anderson filed an "Ex Parte Motion for Immediate Relief" relating to this incident in the juvenile court, but Judge Crnkovich denied the motion without a hearing, which Wang Anderson asserts was a denial of due process. Filing 154 at 111.

Soon thereafter, on the motion of X.C.W.'s guardian ad litem, Judge Crnkovich ordered that no "gifts, clothing items, books, etc." should be provided to the children without approval of the Court. Filing 154 at 112. In a separate order the next day, Judge Crnkovich suspended contact between Wang Anderson and X.C.W. Filing 154 at 112. (Wang Anderson's complaint does not indicate what might have prompted these orders or the guardian ad litem's initial motion.) Wang Anderson claims her due process rights were violated. Filing 154 at 112.

About a month later, the NDHHS filed a "notice of change of placement" for X.C.W.: her foster parents were moving from Bellevue, Nebraska to Blair, Nebraska, and X.C.W. was going with them. Filing 154 at 112-13. Wang Anderson objected, but Judge Crnkovich overruled her objection and, at the end of the hearing, imposed a filing restriction on Wang Anderson, directing

her counsel only to file with the permission of Wang Anderson's guardian ad litem. Filing 154 at 113.

Starting in June 2015, Wang Anderson was permitted to participate in family therapy, but she was excluded again after she "tried to address the pertinent and urgent topic of sex trafficking with X.C.W." Filing 154 at 113. Specifically, Wang Anderson alleges that she brought up "the seriousness and life-threatening consequences of being sexually abused and sexually trafficked with X.C.W. during a family therapy session, to try to educate and protect her." Filing 154 at 119. But the therapist asked Wang Anderson to leave, Wang Anderson alleges, instead of "assist[ing] Wang Anderson in discussing this important and germane topic with X.C.W." Filing 154 at 119. Then, Wang Anderson alleges, the therapist "departed from the therapeutic standard of care" by, allegedly, making "suggestions to X.C.W. regarding how to safely or legally engage in prostitution, shortly after X.C.W. had been sold for money." Filing 154 at 119.

Meanwhile, X.C.W. was allowed by her foster parents to work part-time in a Blair restaurant. Filing 154 at 115-16. Sometimes she walked to and from work. Filing 154 at 115. Wang Anderson complained to various authorities about instances in which X.C.W. was seen "scantily dressed," and she alleges that various defendants ignored "the attire X.C.W. was permitted . . . to wear" by her foster parents. Filing 154 at 115-16. And according to Wang Anderson, X.C.W. arranged to be picked up by a man who, again, "sexually abused and exploited" her. Filing 154 at 115-16. Generally, Wang Anderson blames NDHHS, Phillips, Weinberg, and Steuter for failing to protect X.C.W. from the repeated sexual exploitation that Wang Anderson alleges to have occurred. Filing 154 at 85, 105.

Wang Anderson filed another "Motion for Emergency Hearing" in association with this incident. Filing 154 at 117-18. At that hearing, Wang Anderson alleges, Judge Crnkovich instructed Wang Anderson's counsel to take direction from Wang Anderson's guardian ad litem, explaining that Wang Anderson's "mental health challenges are profound" and "apparent in every interaction." Filing 154 at 118. This, Wang Anderson claims, was also a denial of due process. Filing 154 at 118-19. But a month later, Judge Crnkovich terminated the appointment of Wang Anderson's guardian ad litem. Filing 154 at 119. Wang Anderson asserts that because of the "illegal" appointment of the guardian ad litem, "Judge Crnkovich did not consider or respond to the life-threatening concerns about X.C.W. raised by Wang Anderson, for several months, and X.C.W. and Wang Anderson suffered damage." Filing 154 at 119.

In May 2016, the juvenile court changed the permanency objective for X.C.W. to independent living. Filing 154 at 121. At the same time, Judge Crnkovich denied Wang Anderson's requests for visitation with X.C.W. Filing 154 at 121. X.C.W. moved to another foster home, then to an "independent living arrangement," then to a dormitory at the University of Nebraska-Lincoln. Filing 154 at 121. But in December 2016, she was returned to her foster home in Blair. Filing 154 at 123. After that, she was sent to another foster placement, where she remained when this complaint was filed. Filing 154 at 124. Wang Anderson blames the NDHHS, Phillips, Weinberg, and Steuter for placing X.C.W. into independent living when, according to Wang Anderson, she was not yet ready. Filing 154 at 122.

Wang Anderson asserts several federal and state-law claims against sixty-nine different defendants, on behalf of herself and X.C.W. Filing 154 at 1-2. She claims a number of federal constitutional violations, including violation of their rights to due process and familial association, unlawful

seizure, a deliberately indifferent failure to protect, retaliation for constitutionally protected activity, violation of Wang Anderson's First Amendment rights, and discrimination against Wang and Wang Anderson because of their Chinese origin. Filing 154 at 124-30, 137-47. She also claims X.C.W. wasn't provided with accommodations required by § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Filing 154 at 147-48. And, she says, she and X.C.W. were denied statutory rights arising under 42 U.S.C. §§ 621 *et seq.* & 670 *et seq.* Filing 154 at 150-57. Finally, she asserts state-law claims including negligence, negligent and intentional infliction of emotional distress, and a civil rights claim pursuant to Neb. Rev. Stat. § 20-148. Filing 154 at 131-37, 148-50.

Specifically, as to the State Defendants, Wang Anderson asserts:

1. A § 1983 claim based on Fourth Amendment unlawful seizure against White (filing 154 at 124);

2. State-law negligence claims against all defendants (filing 154 at 130);

3. A § 1983 claim based on violation of the "substantive due process rights to family integrity and the parent-child relationship" against all "Individual Defendants" (filing 154 at 137);

4. A § 1983 claim based on deliberate indifference to X.C.W.'s serious health and safety needs against all "Individual Defendants" (filing 154 at 142-43);

5. A § 1983 claim based on "retaliation for protected activity" against the NDHHS and Judge Crnkovich (filing 154 at 143);

6. A § 1983 claim based on the First Amendment right to free speech against Judge Crnkovich (filing 154 at 145);

7. A discrimination claim pursuant to 42 U.S.C. § 2000d against the State of Nebraska, the NDHHS, and White (filing 154 at 145);

8. A claim under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, against the State of Nebraska, the NDHHS, and Judge Crnkovich (filing 154 at 147);

9. Section 20-148 "civil rights" claims against all defendants (filing 154 at 148);

10. Negligent and intentional infliction of emotional distress claims against all defendants (filing 154 at 149);

11. A § 1983 claim based on violation of 42 U.S.C. § 621 *et seq*. against the State of Nebraska, the NDHHS, Phillips, Weinberg, and Steuter (filing 154 at 150); and

12. A § 1983 claim based on violation of 42 U.S.C. § 670 *et seq*. against the State of Nebraska, the NDHHS, Phillips, Weinberg, and Steuter (filing 154 at 153).

The State Defendants move to dismiss all Wang Anderson's claims against them, pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the

factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

A motion pursuant to Rule 12(b)(1) challenges whether the court has subject matter jurisdiction. The party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010). Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008). The State Defendants are advancing a "facial attack" to subject matter jurisdiction, based on the pleadings or documents that are judicially noticeable. *See Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). Accordingly, the Court restricts itself to the pleadings and Wang Anderson receives the same protections as she would defending against a motion brought under Rule 12(b)(6). *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

## DISCUSSION

Before addressing the parties' arguments more specifically, the Court reiterates one of its previous holdings: the Court has already held that Wang Anderson could not assert claims on X.C.W.'s behalf, and dismissed X.C.W.'s

claims without prejudice. Filing 481 at 9-13, 36. Many of the claims asserted against these movants are premised on the alleged breach of their duties to X.C.W., and those claims have been dismissed, for the reasons previously explained by the Court. Filing 481 at 9-13. That specifically includes X.C.W.'s claim for deliberate indifference to her medical needs, in its entirety. Filing 493 at 19. Only Wang Anderson's own claims remain at issue here.

SOVEREIGN IMMUNITY

The State Defendants' first argument is that the State has sovereign immunity from Wang Anderson's § 1983 claims. Filing 263 at 5-7. And of course, they're right. Section 1983 did not abrogate the State's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). And the Supreme Court has held quite clearly that a State is not even a "person" against whom a § 1983 action may be maintained. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). That includes not only the State of Nebraska, named as such, but the NDHHS as an arm of the State. *See Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429-31 (1997); *see also Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017); *Div. of Emp't Sec. v. Bd. of Police Commissioners*, 864 F.3d 974, 980 (8th Cir. 2017); *Anthony K. v. State*, 855 N.W.2d 802, 813 (Neb. 2014). And it also includes State officers sued in their official capacities, because that is only another way of pleading an action against the State. *Lewis*, 137 S. Ct. at 1290-91; *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

Wang Anderson argues at some length that because Congress has abrogated the State's immunity under certain antidiscrimination statutes, including the Rehabilitation Act, the State's immunity from 1983 claims has also been abrogated. Filing 466 at 83 (citing 42 U.S.C. § 2000d-7). Wang Anderson then advances the remarkable argument that the Court should

disregard the Supreme Court's decision in *Will* in favor of Justice Brennan's dissenting opinion in that case. Filing 466 at 86. The Court is not persuaded that abrogation of sovereign immunity for purposes of one statute can silently effect an abrogation for another. *Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) (citing *Edelman v. Jordan*, 415 U.S. 651, 673-74 (1974)). And for fairly obvious reasons, the Court declines Wang Anderson's invitation to disregard several basic principles of law: that it is the Supreme Court's prerogative, alone, to overrule one of its precedents, *Bosse v. Oklahoma*, 137 S. Ct. 1, 1 (2016), and that when there is controlling Supreme Court precedent, the Court is bound by that decision and cannot elect to adopt the views of a dissenting Justice, *United States v. Morales*, 813 F.3d 1058, 1068 (8th Cir. 2016). "For the lower federal courts, an explicit Supreme Court holding is like a statute in that its plain language must be obeyed." *Helseth v. Burch*, 258 F.3d 867, 870 (8th Cir. 2001).

Wang Anderson also argues that the State waived sovereign immunity by forming a "partnership" with Nebraska Families Collaborative to manage juvenile cases, because a "person" for purposes of statutory construction includes corporations, companies, and partnerships. Filing 466 at 85 (citing 1 U.S.C. § 1). A true partnership might be a "person" for purposes of § 1983. *See* *Laredo Rd. Co. v. Maverick Cty., Texas*, 389 F. Supp. 2d 729, 733 (W.D. Tex. 2005); *see also* *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 683-90 (1978). But no "partnership," in the sense of a distinct entity recognized in law as a person, *see* *Clay, Robinson & Co. v. Douglas Cty.*, 129 N.W. 548, 549 (Neb. 1911), was created here.

Finally, Wang Anderson contends that the State has waived its Eleventh Amendment immunity by asking the Court to exercise supplemental jurisdiction over her state-law claims. Filing 466 at 87 (citing *Lapides v. Bd. of*

*Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002)). But *Lapides* simply held that a state which has waived its sovereign immunity from state-law suits in state court waives its Eleventh Amendment immunity to having those state-law claims adjudicated in federal court by removing the case from state to federal court. 535 U.S. at 617-18.

And here, the State is not asserting that Eleventh Amendment immunity precludes consideration of Wang Anderson's state-law claims in federal court. Nor has the State of Nebraska waived its sovereign immunity to § 1983 claims in state court. *Anthony K.*, 855 N.W.2d at 813. Furthermore, waiving immunity from suit in a federal forum is not the same as waiving substantive immunity from liability. *See New Hampshire v. Ramsey*, 366 F.3d 1, 15 (1st Cir. 2004); *see also Stroud v. McIntosh*, 722 F.3d 1294, 1301 (11th Cir. 2013); *Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 198-99 (3d Cir. 2008). And finally, *Lapides* expressly excluded § 1983 claims from such a waiver, reaffirming the principle that "a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Id*. at 617.

The Court simply finds no authority for the proposition that by asking the Court to exercise supplemental jurisdiction over Wang Anderson's state-law claims, the State has somehow waived its substantive immunity from § 1983 claims. *Cf. Stewart v. North Carolina*, 393 F.3d 484, 488-89 (4th Cir. 2005). Accordingly, the Court will dismiss Wang Anderson's § 1983 claims against the State, NDHHS, and State Defendants in their official capacities.[1]

---

[1] The Court notes the State Defendants' attempt to backtrack in its reply brief, apparently changing their minds about whether Wang Anderson's state-law claims should be decided in federal court. Filing 476 at 2-3. Their litigation conduct, the Court finds, is inconsistent with that argument. *See United States v. Metro. St. Louis Sewer Dist.*, 578 F.3d 722, 725 (8th Cir.

The State Defendants also argue that Judge Crnkovich is entitled to absolute judicial immunity from Wang Anderson's claims against her. And of course, they're right about that too. Generally, a judge is immune from a suit for money damages, because a judge must be able to act upon his or her own convictions, without apprehension of personal consequences. *Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (citing *Mireles v. Waco*, 502 U.S. 9 (1991)). And that immunity is not overcome by allegations of bad faith or malice. *Id*. Rather, a judge is immune from suit except for two narrow sets of circumstances: (1) liability for non-judicial actions, *i.e.*, actions not taken in the judge's judicial capacity; and (2) actions that are, though judicial in nature, taken in the complete absence of all jurisdiction. *Id*. at 1090-91. Wang Anderson argues for both sets of circumstances. Filing 466 at 107-08. But she has alleged facts supporting neither.

To begin with, an act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in her judicial capacity. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). The Court considers a particular act's relation to a general function normally performed by a judge, not the propriety of the act itself. *Woodworth*, 891 F.3d at 1092. Each of the actions Judge Crnkovich is alleged to have taken were taken in her judicial capacity: ruling on petitions, motions, and objections presented to her; appointing a guardian ad litem for a parent she believed might be incompetent; and generally managing the docket of a juvenile court proceeding duly assigned to her. There are no allegations that she, for instance, acted not a result of the case before her, but as a result of events in her private, nonjudicial life, in

___

2009). But because the Court is dismissing Wang Anderson's state-law claims anyway, the Court is guessing the State Defendants won't be too upset.

which she had a personal stake. *See id.* at 1092-93; *see also Schottel,* 687 F.3d at 373.

Nor is she alleged to have acted in the complete absence of all jurisdiction. Where judicial immunity is at issue, the scope of a judge's jurisdiction is construed broadly. *Schottel,* 687 F.3d at 373 (citing *Stump v. Sparkman,* 435 U.S. 349 (1978)).[2] So, a judge is not deprived of immunity because of an action taken in error, done maliciously, or in excess of authority. *Id.* While the Separate Juvenile Court for Douglas County is a court of limited jurisdiction, that court plainly had jurisdiction in this case. *See Koepf v. York Cty.,* 251 N.W.2d 866, 869 (Neb. 1977); *cf. Williams v. Williams,* 532 F.2d 120, 121-22 (8th Cir. 1976). The acts Judge Crnkovich is alleged to have taken exercised that jurisdiction, and "such an action—taken in the very aid of the judge's jurisdiction over a matter before [her]—cannot be said to have been taken in the absence of jurisdiction." *Mirales,* 502 U.S. at 13; *accord Schottel,* 687 F.3d at 373-74.

In sum, Wang Anderson isn't accusing Judge Crnkovich of acting nonjudicially, or in the absence of all jurisdiction: rather, she's accusing Judge Crnkovich of garden-variety legal error. Judge Crnkovich has immunity from those claims, and they will be dismissed.

### SECTION 1983 CLAIMS AGAINST PHILLIPS, WEINBERG, AND STEUTER IN THEIR INDIVIDUAL CAPACITIES

The State Defendants argue that Wang Anderson's individual-capacity § 1983 claims against Phillips, Weinberg, and Steuter should be dismissed for

---

[2] The Court again declines Wang Anderson's invitation to adopt the dissenting opinion of a Supreme Court justice—this time, Justice Powell's dissent in *Stump. See* filing 466 at 108.

failure to state a claim, because they're premised on *respondeat superior* liability. Filing 263 at 8. The Court agrees.

It's clear from the complaint that Phillips, Weinberg, and Steuter are being sued based on their supervisory responsibility for the NDHHS, its Division of Children and Family Services, and the area of that division responsible for Omaha, respectively. *See* filing 154, *passim*. But because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Marsh v. Phelps Cty.*, No. 17-1260, 2018 WL 3863923, at *6 (8th Cir. Aug. 15, 2018). Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. *Id*.

No *facts* are alleged (as opposed to conclusory assertions) establishing that Phillips, Weinberg, or Steuter directly participated in the alleged violations of Wang Anderson's constitutional rights. And with respect to the acts of their subordinates, they are entitled to qualified immunity unless Wang Anderson can prove that they (1) received notice of a *pattern* of unconstitutional acts committed by a subordinate, and (2) were deliberately indifferent to or authorized those acts. *Id*. Wang Anderson's allegations would not support a finding that notice was given of such a pattern—or even that there *was* such a pattern—in this case. *See Brewington v. Keener*, No. 17-1382, 2018 WL 4117728, at *4 (8th Cir. Aug. 30, 2018).[3]

_____

[3] It should also be noted that Wang Anderson's lengthy argument as to what these defendants knew and approved of is directed exclusively at the alleged harm to X.C.W. and Y.C.W. that she says resulted. *See* filing 466 at 93-107. She specifically asserts that her "claims against Phillips, Weinberg, and Steuter arise out of a failure to protect and care for X.C.W." which, she says, "led to X.C.W.'s sexual exploitation and moral destruction." Filing 466 at 98. But those claims have been dismissed because Wang Anderson is not the proper party to

- 18 -

The State Defendants argue that Wang Anderson's § 1983 individual-capacity claims against White and Heathershaw Risko are barred by the *Rooker-Feldman* doctrine. Filing 263 at 7; *see D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923). Under that doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments," *Lance v. Dennis*, 546 U.S. 459, 463 (2006), and the State Defendants contend that the juvenile court's orders qualify. Filing 281 at 9-10.

*Rooker-Feldman* holds that pursuant to 28 U.S.C. § 1257, federal district courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Shelby Cty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co.*, 855 F.3d 836, 840 (8th Cir. 2017). But § 1257 doesn't "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id*. (cleaned up). In particular,

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous
> decision by a state court, and seeks relief from a state court

---

prosecute them—so, even had Wang Anderson sufficiently alleged supervisory responsibility, those claims would fail because they're not Wang Anderson's claims to assert.

judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008) (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)); *accord Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016).

In other words, *Rooker-Feldman* doesn't bar allegations of misconduct in underlying and complete state-court litigation. *See Hageman*, 817 F.3d at 615. So, in *Riehm*, the Eighth Circuit held that *Rooker-Feldman* didn't bar a teenager's unlawful seizure claim against a county social worker that was based, in part, on his allegation that the social worker's *ex parte* petition for his detention was materially misleading. 538 F.3d at 960-61, 965. The teenager's claim, the Eighth Circuit explained, was independent because it alleged unconstitutional actions by the social worker in obtaining the *ex parte* court order, but did not challenge the issuance of the *ex parte* order itself. *Id.* at 965. And other courts have reached similar conclusions in factually comparable circumstances. *See Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 309-10 (6th Cir. 2010); *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1194 (10th Cir. 2010); *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002); *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 491 (3d Cir. 1997).

In this case, Wang Anderson's claims against White and Heathershaw Risko stem, at least in part, from allegations of misrepresentation and misconduct in removing X.C.W. from Wang Anderson's home, and in the course of the dependency proceeding. True, in other parts of her complaint, Wang

Anderson attacks the juvenile court's orders—and, if Judge Crnkovich wasn't entitled to judicial immunity, *Rooker-Feldman* might well bar some or all of the claims against her. But it doesn't bar Wang Anderson's claims against White or Heathershaw Risko.

S<span style="font-variant:small-caps">TATE</span> L<span style="font-variant:small-caps">AW</span> T<span style="font-variant:small-caps">ORT</span> C<span style="font-variant:small-caps">LAIMS</span>

The State Defendants argue that Wang Anderson's state-law tort claims should be dismissed for failure to abide by the requirements of the Nebraska State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 *et seq.* (STCA). Specifically, the STCA only permits a plaintiff to sue on a tort claim unless (1) the claim has been disposed of by the State, or (2) six months have passed since the claim was filed with the State. § 81-8,213. And on the face of her complaint, Wang Anderson filed this suit only three months after filing her claim with the State Tort Claims Board. Filing 154 at 136; *see* filing 1; *see also Cole v. Isherwood,* 653 N.W.2d 821, 827 (Neb. 2002).[4]

Wang Anderson seems to concede this argument to some extent: in response, she says she "intends to file a notice of dismissal of her [state-law tort claims] as against the State, NDHHS, and White, Crnkovich, Heathershaw Risko, Phillips, Weinberg, and Steuter, in their official capacities only." Filing 466 at 110. And she's done so, filing 467, but needn't have bothered—the Court would have dismissed them for her. Wang Anderson also contends, however, that her individual-capacity claims shouldn't be dismissed, because the STCA "does not apply to those causes of action." Filing 466 at 110.

---

[4] The affirmative defense of noncompliance with the STCA is cognizable here, on a motion to dismiss, because the facts necessary to the defense appear on the face of the complaint. *See Cole v. Isherwood,* 716 N.W.2d 36, 41-42 (Neb. 2006); *Weeder v. Cent. Cmty. Coll.,* 691 N.W.2d 508, 515 (Neb. 2005).

She's wrong about that. In fact, the Nebraska Supreme Court has explained that under the STCA,

> whether a plaintiff has sued a state officer or employee in his or her individual capacity is irrelevant to whether the STCA bars a tort claim against that officer or employee. That is because § 81-8,210(4) defines a tort claim to mean a claim for money damages caused by the wrongful or negligent conduct of an officer or employee who was acting "within the scope of his or her office or employment, under circumstances in which the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death." And § 81-8,209 authorizes tort liability for a state officer or employee only to the extent the STCA permits. So, under the STCA's definition of a tort claim, plaintiffs are limited to suing state officers and employees in their official capacities. We have held that only when the officer or employee was *not* acting within the scope of his or her office or employment can a plaintiff pursue a tort claim against the officer or employee individually. This means that if an officer or employee was acting within the scope of his or her office or employment and the alleged tortious conduct falls within an exception to the State's waiver of tort immunity, the STCA bars a tort claim against the officer or employee, regardless of the capacity in which he or she was purportedly sued.

*Davis v. State*, 902 N.W.2d 165, 181 (Neb. 2017) (citational footnotes omitted). And in this case, the State Defendants could not have committed the tortious acts alleged in Wang Anderson's complaint as private individuals. *See id*. Even if they were negligent or abused their authority, they were plainly acting

within the scope of their office or employment. *See id*. Accordingly, the claims are barred by non-compliance with the STCA.

For the sake of completeness, the Court notes that Wang Anderson's state-law claims are also subject to dismissal for reasons the Court has explained in its previous orders. Specifically, Wang Anderson's negligence claims fail to satisfy Rule 8(a), and the complaint fails to state a negligence claim against *any* defendant because it does not present any of the defendants fair notice of which allegations are made against them. Filing 481 at 13-14. Her emotional distress claims do not satisfy Rule 8(a) either, and she has not alleged the required degree of emotional distress for either tort. Filing 481 at 29-33. Nor has she alleged conduct of the "outrageous and extreme" variety necessary to prove intentional infliction of emotional distress. *See* filing 481 at 34-35. Wang Anderson's state-law tort claims will be dismissed for those reasons as well.

SECTION 20-148 CLAIMS

The Court has previously explained why § 20-148 provides no claim for Wang Anderson. Filing 481 at 28-29. That conclusion applies with even more force to the State Defendants: § 20-148 does not reach individuals acting in their capacities as public officials. *Cole v. Clarke*, 598 N.W.2d 768, 772 (Neb. Ct. App. 1999); *see Potter v. Bd. of Regents of the Univ. of Nebraska*, 844 N.W.2d 741, 750 (Neb. 2014); *Sinn v. City of Seward*, 523 N.W.2d 39, 49-50 (Neb. Ct. App. 1994). These claims will be dismissed.

TITLE VI AND REHABILITATION CLAIMS

Wang Anderson claims that the State, the NDHHS, and White discriminated against her in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, which prohibits discrimination in federally assisted

programs based on race, color, or national origin. And she claims that the State, the NDHHS, and Judge Crnkovich violated § 504. (That claim will, of course, be dismissed as to Judge Crnkovich, as explained above.)

The State Defendants' first argument, addressed at both claims, is that Wang Anderson hasn't alleged facts showing a waiver of sovereign immunity, because she didn't specifically plead that the NDHHS, in particular, receives federal funding. That argument isn't persuasive. Sovereign immunity is an affirmative defense, to be raised by the defendant. *See Sung Park v. Indiana Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012); *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007); *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 237-39 (2d Cir. 2006); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002); *Christy v. Pennsylvania Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995); *see also United States ex rel. Fields v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, 872 F.3d 872, 877 (8th Cir. 2017), *cert. denied sub nom. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist. v. U.S. ex rel. Fields*, 138 S. Ct. 677 (2018). And in any event, Wang Anderson alleged that she was denied "one or more programs or activities receiving Federal financial assistance, including, without limitation, child welfare services." Filing 154 at 146. This is not a model of specific pleading—in fact, it's just statutory language—but the Court finds it sufficient to plead past the State's somewhat pedantic contention that we don't *know* whether the NDHHS has accepted federal funding.

But the Court is persuaded that White is not a proper defendant to Wang Anderson's Title VI claim. The Court has already held that individual employee's can't be personally liable under Title VI. Filing 493 at 21-23 (collecting cases). Wang Anderson's Title VI claim will be dismissed as to her. But because the State and NDHHS made no other arguments as to the

sufficiency of Wang Anderson's Title VI and § 504 claims, they may proceed as to those defendants.

42 U.S.C. §§ 621 & 670 CLAIMS

Finally, Wang Anderson attempts to assert claims for relief based on the alleged failure of the State, NDHHS, Phillips, Weinberg, and Steuter, to meet standards for foster care programs set forth in §§ 621 *et seq.* & 670 *et seq.* Because those claims are asserted pursuant to § 1983, they've already been disposed of as to the aforementioned defendants. But for the sake of completeness, the Court notes its previous holding that neither set of statutes creates a privately enforceable right of action, filing 493 at 24-29, and the Court will dismiss those claims for that reason as well.

CONCLUSION

Accordingly, the Court will grant the State Defendants' motion to dismiss in substantial part, but will deny it in part, as set forth above. Specifically, the claims advancing (at least at this stage of the proceedings) are:

- a § 1983 claim based on Fourth Amendment unlawful seizure, against White in her individual capacity;
- a § 1983 claim based on the substantive due process right to family integrity, against White and Heathershaw Risko in their individual capacities;
- a Title VI claim against the State and NDHHS; and
- a § 504 claim against the State and NDHHS.

Wang Anderson's other claims against the State Defendants will be dismissed.

IT IS ORDERED:

1.    The State Defendants' motion to dismiss (filing 261) is granted in part and denied in part, as set forth above.

2.    Courtney Phillips, Douglas Weinberg, Camas Steuter, and Elizabeth Crnkovich are terminated as parties.

Dated this 27th day of September, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge