IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CATHERINE YANG WANG ANDERSON,<br><br>Plaintiff,<br><br>vs.<br><br>THE STATE OF NEBRASKA, et al.,<br><br>Defendants. | 4:17-CV-3073<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on Project Harmony's motion to dismiss (filing 359), challenging the Court's subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *See* filing 360 at 3. The Court will grant that motion in part and deny it in part.

## BACKGROUND

The plaintiff, Catherine Yang Wang Anderson (Wang Anderson) is the mother of two girls, X.C.W. and Y.C.W. Filing 154 at 2. Wang Anderson's husband, Bo Wang (Wang) is their father. Filing 154 at 2. X.C.W. was a minor when this case was filed, and Wang Anderson sued both in her own capacity and as "next friend" of X.C.W. Filing 154 at 2. Project Harmony is a nonprofit corporation allegedly involved in investigating accusations that X.C.W. and Y.C.W. had been neglected or abused by their parents. Filing 154 at 7, 43.

Very generally, Wang Anderson alleges that X.C.W. was unlawfully made a ward of the State of Nebraska and held by the State against her will. Filing 154 at 2. But it was Y.C.W. who first drew the attention of authorities. According to Wang Anderson, Y.C.W. had an "inappropriate" personal relationship with a teacher at her high school because Y.C.W. was permitted

and encouraged to confide in him about personal problems. Filing 154 at 24-28. According to the teacher, Y.C.W. told him she had sexual identity issues. Filing 154 at 35. Wang Anderson blames Y.C.W.'s friendship with her teacher for a "breakdown" in her own relationship with Y.C.W., who reported to school officials on October 8, 2013 that Wang Anderson had threatened her. Filing 154 at 28.

Based on Y.C.W.'s report that she didn't feel safe going home, sheriff's officers removed Y.C.W. from Wang Anderson's residence and took her to Project Harmony for a temporary foster placement. Filing 154 at 33. One of the sheriff's deputies observed that when Wang Anderson answered the door, she was wearing a rubber glove, and suspected that Wang Anderson might be mentally ill. Filing 154 at 29-31. Investigators from the Nebraska Department of Health and Human Services (NDHHS) went to Wang Anderson's residence that evening, and reported hazardous conditions. Filing 154 at 35. So, after X.C.W. went to school the next day, she was also placed in the temporary custody of NDHHS. Filing 154 at 36. X.C.W. and Y.C.W. were placed with the same foster parent, and both girls were evaluated at Project Harmony. Filing 154 at 34, 37, 43.

Wang Anderson alleges that Suzanne Haney, M.D. "was employed by Douglas County and/or Project Harmony as a physician," Lisa Johnson "was employed by NDHHS, Douglas County, and/or Project Harmony as a nurse practitioner," and Jennifer White "was employed by NDHHS and/or Project Harmony, as a social worker." Filing 154 at 8. According to Wang Anderson, Haney and Johnson failed to properly examine the girls, and didn't properly

address the girls' health needs. Filing 154 at 43. And as far as the Court can tell, Project Harmony's connection to the girls ended there.[1]

A juvenile proceeding was initiated in the Separate Juvenile Court of Douglas County, Nebraska. Filing 154 at 44. The petition alleged—Wang Anderson says wrongly—that X.C.W. and Y.C.W. had been subjected to inappropriate discipline, not provided with safe housing, deprived of proper parental care and support, and that Wang Anderson had been seen acting in a manner consistent with untreated mental health needs. Filing 154 at 44-45. An ex parte juvenile court order placed the girls in the temporary custody of DHHS, then after a hearing, the juvenile court continued DHHS's temporary custody. Filing 154 at 45-46.

The girls were eventually adjudicated as being juveniles within the meaning of Neb. Rev. Stat. § 43-247(3). Filing 154 at 81. Both spent several months in foster care and mental health treatment. *See* filing 154 at 60-116. In May 2016, the juvenile court changed the permanency objective for X.C.W. to independent living. Filing 154 at 121. She moved to another foster home, then to an "independent living arrangement," then to a dormitory at the University of Nebraska-Lincoln. Filing 154 at 121. But in December 2016, she was returned to foster placement, where she remained when this complaint was filed. Filing 154 at 123-24.

Wang Anderson asserts several federal and state-law claims against sixty-nine different defendants, on behalf of herself and X.C.W. Filing 154 at 1-2. She claims a number of federal constitutional violations, including violation of their rights to due process and familial association, unlawful

---

[1] A number of accusations are leveled at White for events that followed, but it's fairly clear from the complaint that even if White was somehow associated with Project Harmony, she was wearing a different hat as part of the NDHHS's dependency case.

seizure, a deliberately indifferent failure to protect, retaliation for constitutionally protected activity, violation of Wang Anderson's First Amendment rights, and discrimination against Wang and Wang Anderson because of their Chinese origin. Filing 154 at 124-30, 137-47. She also claims X.C.W. wasn't provided with accommodations required by § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Filing 154 at 147-48. And, she says, she and X.C.W. were denied statutory rights arising under 42 U.S.C. §§ 621 *et seq.* & 670 *et seq.* Filing 154 at 150-57. Finally, she asserts state-law claims including negligence, negligent and intentional infliction of emotional distress, and a civil rights claim pursuant to Neb. Rev. Stat. § 20-148. Filing 154 at 131-37, 148-50.

Specifically, as to Project Harmony, Wang Anderson asserts:

- Policy-or-custom § 1983 claims (filing 154 at 126);
- State-law negligence claims (filing 154 at 130, 135);
- A § 1983 claim based on violation of the "substantive due process rights to family integrity and the parent-child relationship" (filing 154 at 137, 142);
- A § 1983 claim based on deliberate indifference to X.C.W.'s serious health and safety needs (filing 154 at 142-43);
- Section 20-148 "civil rights" claims (filing 154 at 148); and
- Negligent and intentional infliction of emotional distress claims (filing 154 at 149).

Project Harmony moves to dismiss those claims for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1). Filing 360 at 3.

## STANDARD OF REVIEW

A motion pursuant to Rule 12(b)(1) challenges whether the court has subject matter jurisdiction. The party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010). Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008). Project Harmony is making a "facial attack" to subject matter jurisdiction, based on the pleadings. *See Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). Accordingly, the Court restricts itself to the pleadings and Wang Anderson receives the same protections as she would defending against a motion brought under Rule 12(b)(6). *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

## DISCUSSION

Project Harmony's motion to dismiss raises only three discrete issues: (1) whether Wang Anderson has standing to pursue relief as "next friend" of X.C.W., (2) whether the Court should abstain pursuant to the *Younger*

abstention doctrine, and (3) whether Wang Anderson's claims are barred by the *Rooker-Feldman* doctrine.² Filing 360.

The Court already held that Wang Anderson could not assert claims on X.C.W.'s behalf, and dismissed X.C.W.'s claims without prejudice. Filing 481 at 9-13, 36. The Court will grant Project Harmony's motion to dismiss to that extent, for the reasons previously explained by the Court. *See* filing 481 at 9-13. Only Wang Anderson's own claims remain at issue here.

Next, Project Harmony argues that the Court should abstain from hearing this case pursuant to the *Younger* abstention doctrine. Filing 360 at 5-7; *see Younger v. Harris*, 401 U.S. 37, 53-54 (1971). The Court has also already explained why *Younger* is not applicable here, after the juvenile court proceedings have terminated. Filing 487 at 5-6.

Finally, Project Harmony argues that Wang Anderson's claims are barred by the *Rooker-Feldman* doctrine. Filing 360 at 8-10; *see D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923). The Court has addressed *Rooker-Feldman* arguments at length over the course of this proceeding, and after careful consideration has rejected them. *See* filing 486 at 21-23; filing 487 at 6-7; filing 490 at 8-9; filing 501 at 19-21; *see also* filing 493 at 15 n.3. The Court reaches the same conclusion here,

---

² The Court has also noted the suggestion in Project Harmony's reply brief that the allegations in the complaint are insufficient to state a claim against Project Harmony. Filing 484 at 2. While there may be some force to that argument, for reasons the Court has detailed in other orders, the Court concludes that it was newly presented in Project Harmony's reply brief, depriving Wang Anderson of a chance to meaningfully respond. And Project Harmony's motion was clearly asserted, exclusively, under Rule 12(b)(1). *See* filing 360 at 3. So, the Court declines to consider it. *See Torgeson v. Unum Life Ins. Co. of Am.*, 466 F. Supp. 2d 1096, 1121 (N.D. Iowa 2006). Whether Project Harmony's argument might have merit if asserted in a Rule 12(c) motion is something the Court does not consider at this time. *See* Rule 12(h)(2)(B).

because it has not been asked to review and reject the juvenile court's orders, even if Wang Anderson's claims are inconsistent with some of the juvenile court's conclusions. *See id.*

Accordingly, Project Harmony's motion to dismiss will be granted to the extent that the Court has already dismissed X.C.W.'s claims, but the balance of Project Harmony's motion will be denied.

IT IS ORDERED that Project Harmony's motion to dismiss ([filing 359](#)) is granted in part and denied in part.

Dated this 28th day of September, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge