IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CATHERINE YANG WANG ANDERSON,<br><br>Plaintiff,<br><br>vs.<br><br>THE STATE OF NEBRASKA, et al.,<br><br>Defendants. | 4:17-CV-3073<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the motion for judgment on the pleadings (filing 488) filed by Reliable Rock Counseling and Consulting, P.C., Amanda Gurock, Komi Amededji, and Judy McAuliffe-Treinen (collectively, the Reliable Rock defendants). Their motion will be granted.

## BACKGROUND

The plaintiff, Catherine Yang Wang Anderson (Wang Anderson) is the mother of two girls, X.C.W. and Y.C.W. Filing 154 at 2. Wang Anderson's husband, Bo Wang (Wang) is their father. Filing 154 at 2. X.C.W. was a minor when this case was filed, and Wang Anderson sued both in her own capacity and as "next friend" of X.C.W. Filing 154 at 2. Reliable Rock is a Nebraska corporation that provides therapy services. Filing 154 at 14. Gurock, Amededji, and McAuliffe-Treinen are all mental health practitioners who allegedly provided therapeutic services to X.C.W. or Y.C.W. on behalf of Reliable Rock. Filing 154 at 13-14; filing 189 at 1-2.

Very generally, Wang Anderson alleges that X.C.W. was unlawfully made a ward of the State of Nebraska and held by the State against her will. Filing 154 at 2. But it was Y.C.W. who first drew the attention of authorities.

According to Wang Anderson, Y.C.W. had an "inappropriate" personal relationship with a teacher at her high school because Y.C.W. was permitted and encouraged to confide in him about personal problems. Filing 154 at 24-28. According to the teacher, Y.C.W. told him she had sexual identity issues. Filing 154 at 35. Wang Anderson blames Y.C.W.'s friendship with her teacher for a "breakdown" in her own relationship with Y.C.W., who reported to school officials on October 8, 2013 that Wang Anderson had threatened her. Filing 154 at 28.

Based on Y.C.W.'s report that she didn't feel safe going home, sheriff's officers removed Y.C.W. from Wang Anderson's residence and took her to Project Harmony for a temporary foster placement. Filing 154 at 33. One of the sheriff's deputies observed that when Wang Anderson answered the door, she was wearing a rubber glove, and suspected that Wang Anderson might be mentally ill. Filing 154 at 29-31. Investigators from the Nebraska Department of Health and Human Services (DHHS) went to Wang Anderson's residence that evening, and reported hazardous conditions. Filing 154 at 35. So, after X.C.W. went to school the next day, she was also placed in the temporary custody of DHHS. Filing 154 at 36. X.C.W. and Y.C.W. were placed with the same foster parent, and both girls were evaluated at Project Harmony. Filing 154 at 34, 37, 43.

A juvenile proceeding was initiated in the Separate Juvenile Court of Douglas County, Nebraska. Filing 154 at 44. The petition alleged—Wang Anderson says wrongly—that X.C.W. and Y.C.W. had been subjected to inappropriate discipline, not provided with safe housing, deprived of proper parental care and support, and that Wang Anderson had been seen acting in a manner consistent with untreated mental health needs. Filing 154 at 44-45. An ex parte juvenile court order placed the girls in the temporary custody of

DHHS, then after a hearing, the juvenile court continued DHHS's temporary custody. Filing 154 at 45-46.

Wang Anderson claims that both girls began to show signs of "mental, emotional and physical distress" that went unnoted and untreated. Filing 154 at 48-49. Wang Anderson blames Reliable Rock, McAuliffe-Treinen, and Gurock, among others. Filing 154 at 48-49. Both girls were diagnosed with mental health disorders; Wang Anderson claims the diagnoses—made by Reliable Rock, McAuliffe-Treinen, and Gurock—were inaccurate. Filing 154 at 52. Wang Anderson also alleges, as a basis for liability, that Reliable Rock, McAuliffe-Treinen, and Gurock did not recommend family therapy, did not encourage the girls to communicate with her, and told them they had a right to refuse contact with her. Filing 154 at 53, 64, 81, 88.

Specifically, Wang Anderson alleges that the Reliable Rock defendants provided therapeutic services to Y.C.W. between October 8, 2013 and March 31, 2015. Filing 154 at 50. And Wang Anderson alleges that Reliable Rock, Gurock, and McAuliffe-Treinen "attempted to provide therapeutic services to X.C.W. between October 8, 2013 and March 31, 2015, but she declined to accept those services." Filing 154 at 50. Reliable Rock assigned McAuliffe-Treinen to be the therapist for both girls, supervised by Gurock, but Wang Anderson claims X.C.W. and Y.C.W. should have been assigned separate therapists. Filing 154 at 50. She also alleges, generally described, that Reliable Rock, McAuliffe-Treinen, and Gurock included inaccurate or false statements in the reports they prepared after evaluating the girls. Filing 154 at 51-52, 57.

X.C.W. was eventually sent to a program for treating eating disorders. Filing 154 at 54. She was partially hospitalized—her time was split between the hospital and her foster home. Filing 154 at 54-55. Based on suggestions from Reliable Rock, McAuliffe-Treinen, and Gurock, DHHS recommended to

the juvenile court that all parental visitation be therapeutic, and the court agreed. Filing 154 at 57, 64. But visitation between Wang Anderson and Y.C.W. was suspended. Filing 154 at 57. Wang Anderson alleges that McAuliffe-Treinen testified in juvenile court on at least one occasion that Wang Anderson's parental rights to Y.C.W. should be terminated, and generally "gave false and defamatory testimony regarding Wang Anderson" in juvenile court. Filing 154 at 58, 81. Wang Anderson also alleges Reliable Rock, Gurock, and McAuliffe-Treinen approved "certain ways of life, behaviors or actions that were inappropriate, morally corruptive, harmful and detrimental. . . ." Filing 154 at 58.

On January 28, 2014, the Douglas County Attorney petitioned the juvenile court to terminate Wang and Wang Anderson's parental rights. Filing 154 at 75. The juvenile court dismissed the termination petitions, but the girls were finally adjudicated as being juveniles within the meaning of Neb. Rev. Stat. § 43-247(3). Filing 154 at 81. Visitation was ordered. Filing 154 at 82.

Meanwhile, X.C.W. had been held out of school during her eating disorder program. Filing 154 at 60. Her condition had deteriorated and more intensive treatment was recommended. Filing 154 at 68. She was placed in an inpatient facility in Oklahoma. Filing 154 at 73. Eventually, she was discharged and put into a new foster placement, and continued treatment for her eating disorder at Children's Hospital in Omaha. Filing 154 at 83-84, 86. But her anorexia later relapsed, and she was again hospitalized. Filing 154 at 91-92. In November 2014, she was placed at a treatment facility in Arizona. Filing 154 at 94. Wang Anderson alleges that while in Arizona—and generally throughout X.C.W.'s mental health treatment—X.C.W.'s care providers didn't appropriately include X.C.W.'s family in her therapy. Filing 154 at 96.

Eventually, visitation was cut off, allegedly in retaliation for Wang Anderson's efforts to contact X.C.W. and participate in her treatment. Filing 154 at 99.

Y.C.W.'s activities during this period are less clear, but Wang Anderson does allege that Gurock assigned Amededji to be Y.C.W.'s therapist, and that Amededji interfered with communications between Y.C.W. and Wang Anderson. Filing 154 at 72. McAuliffe-Treinen, Wang Anderson alleges, stopped providing therapy to Y.C.W. because of unspecified "boundary issues." Filing 154 at 81. According to Wang Anderson, McAuliffe-Treinen "failed to maintain a proper professional relationship with Y.C.W. and failed to document in her discharge summary that these 'boundary issues' were a cause for discharge." Filing 154 at 81.

After discharge from inpatient treatment, X.C.W. was returned to her previous foster placement. Filing 154 at 102. Wang Anderson alleges that in February and March of 2015, Reliable Rock and Gurock provided "therapeutic visitation" to Wang Anderson and X.C.W. Filing 154 at 103. But, Wang Anderson says, the visitation order in place at that point wasn't limited to therapeutic visitation—so, she claims, Reliable Rock and Gurock deliberately interfered with her parental relationship with X.C.W. Filing 154 at 103. She also complains about the failure of Reliable Rock, Amededji, and Gurock to provide her with health information about X.C.W. or Y.C.W. Filing 154 at 104.

In May 2016, the juvenile court changed the permanency objective for X.C.W. to independent living. Filing 154 at 121. She moved to another foster home, then to an "independent living arrangement," then to a dormitory at the University of Nebraska-Lincoln. Filing 154 at 121. But in December 2016, she was returned to her foster home. Filing 154 at 123. After that, she was sent to another foster placement, where she remained when this complaint was filed. Filing 154 at 124. As for Y.C.W., Wang Anderson more generally alleges that

"from October 8, 2013 through April 8, 2016 . . . Y.C.W.'s mental and physical health declined" because a list of defendants, including the Reliable Rock defendants, failed to provide for her needs. Filing 154 at 120.

Wang Anderson asserts several federal and state-law claims against sixty-nine different defendants, on behalf of herself and X.C.W. Filing 154 at 1-2. She claims a number of federal constitutional violations, including violation of their rights to due process and familial association, unlawful seizure, a deliberately indifferent failure to protect, retaliation for constitutionally protected activity, violation of Wang Anderson's First Amendment rights, and discrimination against Wang and Wang Anderson because of their Chinese origin. Filing 154 at 124-30, 137-47. She also claims X.C.W. wasn't provided with accommodations required by § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Filing 154 at 147-48. And, she says, she and X.C.W. were denied statutory rights arising under 42 U.S.C. §§ 621 *et seq.* & 670 *et seq.* Filing 154 at 150-57. Finally, she asserts state-law claims including negligence, negligent and intentional infliction of emotional distress, and a civil rights claim pursuant to Neb. Rev. Stat. § 20-148. Filing 154 at 131-37, 148-50.

Specifically, Wang Anderson asserts her constitutional policy-or-custom claims (*i.e. Monell* claims) against Reliable Rock, among others. Filing 154 at 126. She asserts state-law negligence claims against all defendants. Filing 154 at 130. She asserts § 1983 claims against all individual defendants based on violation of "substantive due process rights to family integrity" and "deliberate indifference" to X.C.W.'s health and safety needs. Filing 154 at 137, 142-43. She asserts § 20-148 claims against all individual defendants. Filing 154 at 148. And she asserts her emotional distress claims against all defendants. Filing 154 at 148-49.

## STANDARD OF REVIEW

As a general rule, a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). A Rule 12(c) motion requires the Court to view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party. *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008). Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009); *Poehl*, 528 F.3d at 1096.

The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 913 (8th Cir. 2014). This plausibility standard is met when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1110 (8th Cir. 2017). The Court assesses plausibility by drawing on its judicial experience and common sense. *Id*. Further, the Court reviews the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Id*. And a pleading that offers labels and conclusions, or a formulaic recitation of the elements of a cause of action, will not do. *Id*.

## DISCUSSION

Before addressing the arguments specific to the Reliable Rock defendants, it will be helpful to note one of the Court's previous holdings that is particularly pertinent: the Court held that Wang Anderson could not assert claims on X.C.W.'s behalf, and dismissed X.C.W.'s claims without prejudice.

Filing 481 at 9-13, 36. Many of the claims asserted against the Reliable Rock defendants are premised on the alleged breach of their duty of reasonable care to X.C.W., and those claims have been dismissed, for the reasons previously explained by the Court. *See* filing 481 at 9-13. That specifically includes X.C.W.'s claim for deliberate indifference to her medical needs, in its entirety. Filing 493 at 19. Only Wang Anderson's own claims remain at issue here.

CONSTITUTIONAL CLAIMS

All of Wang Anderson's constitutional claims fail because the Reliable Rock defendants weren't acting under color of state law. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law—and "acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

The Court extensively discussed the state action requirement in a previous memorandum and order, concluding that X.C.W.'s and Y.C.W.'s caretakers and foster parents had not acted under color of state law. Filing 481 at 17-28. And the Court more specifically addressed the state action requirement in the context of several defendants who provided health care services to X.C.W. or Y.C.W. Filing 485 at 1, 12. With one exception—a physician who was allegedly employed by Douglas County to investigate child abuse allegations—the Court concluded that those medical care providers were private citizens, not acting under color of state law. Filing 485 at 12-15.

The same is true here. Additionally, the Court notes that as to Reliable Rock, Wang Anderson has failed to adequately plead that her injuries resulted

from an unconstitutional policy or custom of that corporate entity. *See* filing 485 at 15-16. The Court will dismiss Wang Anderson's constitutional claims as to the Reliable Rock defendants.

NEGLIGENCE CLAIMS

Next, the Court turns its attention to Wang Anderson's state-law negligence claims. The Court again notes, at the outset, that any claims Wang Anderson purports to assert on X.C.W.'s behalf have been dismissed—and they composed the bulk of Wang Anderson's negligence claims. Any remaining negligence claims, asserted by Wang Anderson on her own behalf, will be dismissed for two reasons.

First, as the Court has previously explained, Wang Anderson's negligence claims fail to satisfy the undemanding standard of Rule 8(a). Filing 481 at 13-14.[1] Second, the Court has previously held that X.C.W.'s and Y.C.W.'s medical care providers owed no legal duty to Wang Anderson. Filing 485 at 17-20. The same is true of the Reliable Rock defendants.

Wang Anderson argues that the Reliable Rock defendants had a duty to Wang Anderson based upon the duty "to third parties who may be subject to serious risks associated with a patient's treatment or condition." Filing 512 at 28 (citing *Flynn v. Bausch*, 469 N.W.2d 125, 128 (Neb. 1991)). But the Court already rejected that argument, explaining that as a matter of public policy, imposing such a duty upon an allegedly abused child's therapist could create an irreconcilable conflict when the interests of child and parent diverge. *See*

---

[1] That's also why the Court declines to address whether Wang Anderson's claims are barred by the two-year statute of limitations for professional negligence, in whole or in part: because the negligence claims themselves are difficult to characterize, it's hard to say what statute of limitations would apply. And it's not necessary at this point.

filing 485 at 19-20.² Accordingly, the Court will dismiss Wang Anderson's negligence claims.

## REMAINING CLAIMS

The Court has already disposed of Wang Anderson's remaining claims as well. Specifically, the Court has explained by § 20-148 has no application here. *See* filing 485 at 20-21. And the Court has explained why Wang Anderson's emotional distress claims are inadequately pled. Filing 481 at 29-35. So, those claims will also be dismissed.

IT IS ORDERED:

1. The Reliable Rock defendants' motion for judgment on the pleadings (filing 488) is granted.

2. Wang Anderson's claims against Reliable Rock Counseling and Consulting, P.C., Amanda Gurock, Komi Amededji, and Judy McAuliffe-Treinen are dismissed.

---

² The Court also notes that to the extent Wang Anderson is attempting to premise her claims upon allegedly false reporting and testimony to the juvenile court, such conduct is privileged. *See DeCamp v. Douglas Cty. Franklin Grand Jury*, 978 F.2d 1047, 1050 (8th Cir. 1992) (citing *Johnson v. Kegans*, 870 F.2d 992, 996 (5th Cir. 1989)); *Drew v. Davidson*, 667 N.W.2d 560, 565 (Neb. Ct. App. 2003) (citing *Gustafson v. Mazer*, 54 P.3d 743, 745 (Wash. Ct. App. 2002)); *see also Briscoe v. LaHue*, 460 U.S. 325, 329-30 (1983); *McKinney v. Okoye*, 806 N.W.2d 571, 576 (Neb. 2011).

3.  Reliable Rock Counseling and Consulting, P.C., Amanda Gurock, Komi Amededji, and Judy McAuliffe-Treinen are terminated as parties.

Dated this 17th day of October, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge